Katie M. Charleston (SBN 252422)
Katie Charleston Law, PC
9151 Atlanta Avenue, No. 6427
Huntington Beach, CA  92615
PH: 317-663-9190
Fax: 317-279-6258
Email: katie@katiecharlestonlaw.com

Attorney for Plaintiff, Demetrious Polychron

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DEMETRIOUS POLYCHRON, an Individual,<br><br>    Plaintiff,<br><br>vs.<br><br>JEFF BEZOS, an Individual, JENNIFER SALKE, An Individual, SIMON TOLKIEN, an Individual, PATRICK MCKAY, an Individual, JOHN D. PAYNE, an Individual, AMAZON STUDIOS LLC, a California Limited Liability Company, AMAZON CONTENT SERVICES, LLC, a Delaware Limited Liability Company,  THE TOLKIEN ESTATE LIMITED, THE TOLKIEN TRUST, and DOES 1-100,<br>    Defendants. | Case No.: 2:23-cv-02831-SVW (Ex)<br><br>**AMENDED COMPLAINT**<br><br>(1) COPYRIGHT INFRINGEMENT;<br>(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT;<br>(3) VICARIOUS INFRINGEMENT; AND<br>(4) UNFAIR COMPETITION<br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES**

1

Comes now Demetrious Polychron ("Plaintiff" or "Polychron") and for his Amended Complaint against Jeff Bezos ("Bezos"), Jennifer Salke ("Salke"), Simon Tolkien ("Tolkien"), Patrick McKay ("McKay"), John D. Payne, ("Payne"), Amazon Studios LLC ("Amazon Studios"), Amazon Content Services LLC ("Amazon Content"), The Tolkien Estate Limited ("Tolkien Estate"), and The Tolkien Trust ("Tolkien Trust") (collectively "Defendants"), states:

## THE PARTIES

1.  Plaintiff Polychron is now, and at all relevant times has been, a resident of Los Angeles, California.

2.  Defendant Bezos is now, and at all relevant times has been, a resident of Los Angeles, California. He is the founder, Director, and the Executive Chair of Amazon Studios.

3.  Defendant Salke is now, and at all relevant times was, a resident of Los Angeles, California. She is the Head of Amazon Studios.

4.  Defendant Tolkien is now, and at all relevant times, was a resident of Santa Barbara, California. Tolkien is the grandson of J.R.R. Tolkien, a shareholder of the Tolkien Estate, Director of the Tolkien Estate Limited, and Director of The Tolkien Trust (collectively "The Tolkien Estate").

5.  Defendant McKay is now, and at all relevant times was, a resident of Los Angeles, California. He is a Showrunner and Executive Producer for Defendant Amazon Studios.

6.  Defendant Payne is a resident of McLean, Virginia. He is a Showrunner and Executive Producer for Defendant Amazon Studios.

7.  Amazon Studios is a Limited Liability Company registered under the laws of the State of California and has its principal place of business in Los Angeles, California.

8.  Amazon Content is a Delaware Limited Liability Company registered as an Out-of-State Limited Liability in California, and is a subsidiary to Amazon Studios.

9.  The Tolkien Estate Limited is a foreign partnership engaging in book

publishing, film, and video games, with a principal place of business at Prama House, 267 Banbury Road, Oxford OX2 7HT, United Kingdom.

10. The Tolkien Trust is a charity registered to the Charity Commission for England and Whales with a principal place of business at 267 Banbury Road, Oxford OX2 7HT, United Kingdom.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1-100, are unknown to Plaintiff, which sues said Defendants by such fictitious names ("Doe Defendants").  If necessary, Plaintiff will seek leave of Court to amend this Complaint to state their true names and capacities when ascertained.  Plaintiff is informed and believes and, based thereon, alleges that the Doe Defendants are also subject to the relief requested herein by their concerted, contributory, or vicarious acts and responsibility.

## JURISDICTION AND VENUE

12. This action is brought under the Federal Copyright Act of 1976, as amended, 17 U.S.C.A. §§ 101 et seq.  This court has jurisdiction pursuant to 28 U.S.C.A. § 1338(a).  Venue is conferred by 28 U.S.C.A. § 1400(a).

13. This Court has supplemental jurisdiction arising under the laws of California pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under Federal Law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

14. The Court has personal jurisdiction over Defendants Bezos, Salke, McKay, and Tolkien because they reside in California.

15. The Court has personal jurisdiction over Defendant Payne because of his minimum contacts with the State, namely, his employment by Amazon Studios and contracts with agents, managers, publicists, and legal representatives.

16. The Court has personal jurisdiction over Amazon Studios because it is a registered California Limited Liability Company with its principal place of business in Los Angeles, California.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES

3

17. The Court has personal jurisdiction over Amazon Content because it is registered in California as an Out-of-State Limited Liability Company.

18. The Court has personal jurisdiction over the Tolkien Estate Limited, and the Tolkien Trust because of their minimum contacts with California, namely, having these Defendants as controlling shareholders, partners, and directors who reside in California and who have contributed to the acts alleged herein.

19. Venue is proper in this district because most of the Defendants are residents of Los Angeles County, California. Additionally, acts that give rise to this action were committed within this district.

## FACTS COMMON TO ALL CLAIMS

20. Before September 23, 2022, Polychron, who then was and ever since has been a citizen of the United States, created, wrote, and published an original book entitled "The Fellowship of the King" ("TFOTK") and conceived an entire seven book series, "The War of the Rings" ("The Work").

21. Plaintiff's above-referenced book contains a substantial amount of material created by Plaintiff's own skill, labor and judgment and is copyrightable subject matter under the laws of the United States.

22. On or about November 21, 2017, Polychron complied, in all respects, with the copyright laws of the United States and all other laws governing copyrights and secured the exclusive rights and privileges in and to the book of authorship, receiving from the Register of Copyrights a certificate of registration dated and identified as follows: November 21, 2017, The Fellowship of the King, TXu 2-076-068. A copy of the certificate of registration is attached as Exhibit A and incorporated by reference herein. Plaintiff has been and still is the proprietor of all rights, title and interest in and to the above copyright. Publication was made with notice in strict and full compliance with the Federal Copyright Act of 1976.

23. Since September 22, 2022, Plaintiff has published the above-mentioned book, and all copies of it made by Polychron or under his authority or license have been

printed, bound and published in strict conformity with the provisions of the United States Copyright Act of 1976 and all other laws governing copyright.

24.   Since September 22, 2022, Plaintiff has been and still is the sole proprietor of all rights, title and interest in and to the copyright in the described book.

25.   Tolkien, the grandson of J.R.R. Tolkien, the author of The Lord of the Rings ("LOTR") book series, is a controlling shareholder of the Tolkien Estate and Director of the Tolkien Estate Limited and The Tolkien Trust. In his roles, Tolkien can both communicate requests for collaboration to The Tolkien Estate and control such collaborations.

26.   On or about November 21, 2017, Polychron sent a letter to Tolkien explaining his love of the LOTR books and describing his authorship of TFOTK, The Work, which was largely inspired by LOTR. In this letter, Polychron sought a review of the TFOTK manuscript by Tolkien. Polychron received no response.

27.   Subsequently, on or about November 7, 2019, and with excitement to collaborate with the Defendants and the anticipation of publishing his book to the public, Polychron retained counsel to contact Tolkien, The Tolkien Estate Limited, and the Tolkien Trust regarding a potential collaboration with him on The Work as a sequel to LOTR. Polychron's letter detailed descriptions of his book and The Work, with a request for review and collaboration. The Defendants, by counsel, rebuffed any attempt at collaboration the very next day and falsely claimed "the Tolkien Estate has long maintained a policy of not licensing other writers to create sequels or extensions to Tolkien's famous works" despite having licensed the Amazon Defendants to do so.

28.   On or about December 24, 2019, Polychron hand delivered in-person to Tolkien a copy of TFOTK manuscript, identified with the © symbol, at his home in Santa Barbara, hoping he would review the manuscript and reconsider collaboration. On or about January 14, 2019, and after Polychron received no response, Polychron sent a letter to Tolkien, asking Tolkien to return the manuscript and Polychron advised that he would publish TFOTK, and an additional six-book series, independently.

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES**

5

29. Following Tolkien's review of Polychron's copyright-protected manuscript, the Defendants, and each of them, collaborated to create a television series, The Lord of the Rings, The Rings of Power ("ROP") with actual and constructive knowledge of Polychron's registered copyright. While the agreement reached between Amazon Studios and The Tolkien Estate to create the series occurred on or about November 13, 2017, ROP was ultimately copied largely from Polychron's copyrighted book, TFOTK, which is demonstrated by the changes made to the storyline of the series following Tolkien's receipt of the manuscript and at least five characters in ROP sharing the same name and characteristics as in Polychron's work. The initial plot of the ROP series was set to take place years following the LOTR series, focusing on a Young Aragon, the future King of Gondor, but subsequently, and after Tolkien viewed Polychron's manuscript, it changed its focus to the three Elven rings and to 6000 years earlier, consistent with Polychron's story. Amazon Studios paid The Tolkien Estate $250,000,000 for the rights to the Lord of The Rings series and for Tolkien in conjunction with the Tolkien Estate to create the Rings of Power series, that ultimately copied Polychron's book and The Work, and upon information and belief, has earned the Defendants even more since the release of the ROP series.

30. In writing TFOTK, Polychron, while admittedly inspired by LOTR and J.R.R. Tolkien, developed a wholly original book and concept for The Work, including separate and distinct characters and storylines from the LOTR series. These wholly original distinct, and separate characters and storylines compose as much as one-half of the 8-episode ROP series as released and published by Defendants. In many cases, Defendants copied exact language from TFOTK. In other instances, Defendants copied images that match the book cover and descriptions as created in the book as authored by Polychron.

31. On or about October 19, 2022, and despite the Defendants' knowledge of Polychron's copyrighted book and in blatant disregard for their infringing use of Polychron's creation, Defendants, and each of them, caused to be registered what is now

Copyright Registration No. PA0002384079, titled The Lord of the Rings: The Ring of Power: 101, A Shadow of the Past.

32. On or about October 19, 2022, despite the Defendants' knowledge of Polychron's copyrighted book and in blatant disregard for their infringing use of Polychron's creation, Defendants, and each of them, caused to be registered what is now Copyright Registration No. PA0002385184, titled The Lord of the Rings: The Ring of Power: 102, ADRIFT.

33. On or about October 19, 2022, despite the Defendants' knowledge of Polychron's copyrighted book and in blatant disregard for their infringing use of Polychron's creation, Defendants, and each of them, caused to be registered what is now Copyright Registration No. PA0002385180, titled The Lord of the Rings: The Ring of Power: 103, ADAR.

34. On or about October 19, 2022, despite the Defendants' knowledge of Polychron's copyrighted book and in blatant disregard for their infringing use of Polychron's creation, Defendants, and each of them, caused to be registered what is now Copyright Registration No. PA0002385177, titled The Lord of the Rings: The Ring of Power: 104, The Great Wave.

35. On or about October 19, 2022, despite the Defendants' knowledge of Polychron's copyrighted book and in blatant disregard for their infringing use of Polychron's creation, Defendants, and each of them, caused to be registered what is now Copyright Registration No. PA0002385169, titled The Lord of the Rings: The Ring of Power: 105, Partings.

36. On or about October 24, 2022, despite the Defendants' knowledge of Polychron's copyrighted book and in blatant disregard for their infringing use of Polychron's creation, Defendants, and each of them, caused to be registered what is now Copyright Registration No. PA0002385154, titled The Lord of the Rings: The Ring of Power: 107, The Eye.

37. On or about October 24, 2022, despite the Defendants' knowledge of

Polychron's copyrighted book and in blatant disregard for their infringing use of Polychron's creation, Defendants, and each of them, caused to be registered what is now Copyright Registration No. PA0002385182, titled The Lord of the Rings: The Ring of Power: 108, Alloyed.

38. Upon information and belief, additional episodes using the same characters and storylines created by Polychron are expected in a future release by Defendants in an additional four seasons of the show, ROP, over the next four years.

39. Upon information and belief, additional copyrights will be sought by Defendants based on additional episodes of ROP developed using Polychron's wholly original book, TFOTK, and The Work.

## CLAIM ONE

## INFRINGEMENT OF A FEDERALLY REGISTERED COPYRIGHT

(As against Defendants Tolkien, Tolkien Estate, and Tolkien Trust)

40. Plaintiff realleges the allegations of Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. At all relevant times relevant hereto, Plaintiff has been the creator and owner of the book TFOTK, which has been copied, reproduced, distributed, published, and publicly displayed on television by Defendants, including on Amazon Prime as ROP.

42. Plaintiff holds the copyright to TFOTK from the United States Copyright Office.

43. Without authorization, the Tolkien Defendants took original characters, stories, images and exact lines from TFOTK, owned and copyrighted by Plaintiff. They shared them with and sold them to the Amazon defendants to be copied, reproduced and published in the 8-episode first season of the ROP series.

44. The Tolkien Defendants infringed the above-mentioned copyright by sharing them with and selling them to the Amazon Defendants, causing them to be published and placed on the market in a television series, namely ROP, which was copied largely from Plaintiff's copyrighted book, entitled TFOTK.

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES**

45. Polychron has notified Defendants that they have infringed the copyright of Polychron, and Defendants continue to infringe that copyright. Defendants have, and continue to, willfully infringe on Plaintiff's works with the knowledge of Plaintiff's copyright and that they did not and do not have permission to use such copyrighted works.

46. Defendants' use and visual representation of Polychron's protected copyright-protected material has profoundly negatively affected TFOTK, as clearly illustrated by the extensive negative media coverage of the ROP, as well as the ROP 38% audience score on Rotten Tomatoes as of the time of this filing and, therefore Polychron's reputation, rights, and control of revenue from such use.

47. Plaintiff has suffered at least $250,000,000 in damages due to the copyright infringement, but an amount to be proven at trial. Due to their size, it is impractical to attach copies of Polychron's book and the 8-episode series of ROP as exhibits, but copies will be made available and exhibited to the court at all appropriate hearings. A sample of the infringements is attached hereto as Exhibit "B" and incorporated herein throughout, and which includes but is not limited to further infringements occurring throughout ROP and taken directly from TFOTK.

48. Defendants knew their acts constituted copyright infringement.

49. Defendants' conduct was willful within the meaning of the Copyright Act.

50. As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

51. Plaintiff is entitled to recover damages, which include his losses and any and all profits Defendants have made as a result of their wrongful conduct. 17 U.S.C. § 504. Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c).

52. In addition, because Defendants' infringement was willful, and/or with reckless disregard, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES**

53. Plaintiff is entitled to recover his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

54. As a result of Defendants' copyright infringement, Polychron has suffered at least $250,000,000 and will continue to suffer damages in an amount unknown at this time, but to be determined according to proof at trial.

## CLAIM TWO
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

(As against all Defendants)

55. Plaintiff realleges the allegations of Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. Defendants directly infringed on Plaintiff's copyrighted work.

57. All Defendants had constructive knowledge of Polychron's copyright through his copyright registration.

58. Defendants Tolkien, Tolkien Estate and Tolkien Trust had actual knowledge of Polychron's copyright from the personally hand-delivered copy of the TFOTK manuscript to Tolkien at his home in Santa Barbara on Christmas Eve with the copyright symbol clearly identified.

59. Defendants further knew about Polychron's copyright through his direct notification following the release of ROP through Tolkien's counsel.

60. The Tolkien Defendants, having knowledge of the infringement, provided the Amazon Defendants with characters, themes, and imagery from TFOTK if not the book's entirety.

61. The Tolkien Defendants knew the Amazon Defendants' use of TFOTK would infringe on Polychron's copyrights.

62. The Tolkien Defendants took affirmative steps to materially contribute to the Amazon Defendants' infringement, providing Amazon material from TFOTK with actual and constructive knowledge of Polychron's copyright and upon information and belief, continue to do so.

AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES

63. Defendants Bezos and Salke induced infringement by not removing or directing removal by Defendants Amazon Content Services and Amazon Studios of copyright-protected material after actual notice by Polychron, and upon information and belief, continue to fail to do so.

64. Defendants McKay and Payne induced infringement by not removing or directing the Amazon Defendants to remove the infringing material and upon information and belief, continue to fail to do so.

65. Defendants induced, caused, and materially contributed to the infringing acts of others by encouraging, allowing, and assisting others to reproduce and distribute Plaintiff's copyrighted work.

66. Defendants had both constructive and actual knowledge of the infringing acts relating to Plaintiff's copyrighted work.

67. The acts and conduct of Defendants, as alleged above in this Complaint, constitute contributory copyright infringement and caused harm to Plaintiff.

## CLAIM THREE
## VICARIOUS COPYRIGHT INFRINGEMENT

(As against Bezos, Salke, McKay, Payne, Amazon Content Services, and Amazon Studios)

68. Plaintiff realleges the allegations of Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. Defendants Bezos, Salke, McKay, Payne, Amazon Content Services and Amazon Studios directly infringed Plaintiff's copyrighted work.

70. Defendant Bezos, as the founder, Director, and the Executive Chair of Amazon Studio (the parent company of Amazon Content Services) had and has control over the Amazon Defendants and the infringing acts they have committed and continue to commit. He gains a direct financial benefit from the alleged activities.

71. As Head of Studio for Amazon Studios, Defendant Salke had and has control over the infringing acts of the Amazon Defendants, including Defendant Bezos, and gains a direct financial benefit from the alleged activities.

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES**

72. Defendants McKaye and Payne, as showrunners had and have control over the infringement of other writers for Amazon Studios and gain a direct financial benefit from the activities alleged herein.

73. Defendants Amazon Content Services and Amazon Studios, as the employer of Defendants McKay and Payne, had and have control over their infringing acts and as owners of ROP, gained a direct financial benefit from the activities as alleged herein.

74. These Defendants had the right and ability to control the infringing acts of the individuals or entities who directly infringed Plaintiff's works.

75. These Defendants obtained a direct financial benefit from the infringing activities of the individuals or entities who directly infringed Plaintiff's work.

76. The acts and conduct of these Defendants, as alleged in this Complaint, constitute vicarious infringement and caused harm to Plaintiff.

## CLAIM FOUR

## UNFAIR COMPETITION

(As against Tolkien, Tolkien Estate Limited, and Tolkien Trust)

77. Plaintiff realleges the allegations of Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. Upon information and belief, on or about June 8, 2023, the Tolkien Defendants wrongfully and unfairly reported Polychron's TFOTK book as an infringing title to several online booksellers, including at least Ingram Content Group, CoreSource, ipage, Lightning Source, EBates, Rakutan, and Amazon, the single largest bookseller in the world, causing the listing for the sale of TFOTK book to be removed, Plaintiff's Amazon account to be deleted, and Plaintiff informed in writing by Amazon that he is permanently banned from their platform.

79. The removal of Polychron's book and his lifetime ban have caused him actual damages in the way of lost sales, as well as incalculable damage to his reputation by the accusation of infringement.

80. Defendants' actions, being unfair, immoral, unethical, oppressive and

unscrupulous, violate California Business & Professions Code § 17200 and are likely to mislead the public in that such removal of the listing and allegation will lead the public to believe that TFOTK had infringed the rights of others, when in fact, it is an original work with its own proper copyright registration.

81. As a direct and proximate result of Defendants' conduct, Defendants have and continue to receive increased sales of their own literary works by eliminating Plaintiff's competing books and creating publicity by falsely alleging Plaintiff infringed on the Estate's copyright in the previously mentioned separate cause of action by the Estate against Polychron, dated June 1, 2023.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests as follows:

1. Defendants, and their agents, and servants be enjoined during the pendency of this action and permanently from infringing the above-mentioned copyright of Plaintiff in any manner and from publishing, selling, marketing or otherwise disposing of any copies of the television series entitled ROP;

2. An order to show cause be issued directing Defendants to appear before this court at a time and place fixed in the order to show cause why they should not be enjoined and restrained pendente lite from producing, recording, photographing, or publicly performing, displaying or exhibiting the production copied from Plaintiff's book, and The Work, or otherwise infringing Plaintiff's copyright;

3. Defendants and their agents and servants be enjoined during the pendency of this action and permanently pursuant to Business & Professions Code Section 17203 from participating in the acts described as unfair competition as set forth above, and be made to remove the allegations of infringement to any and all online booksellers;

4. Defendants be required to expressly abandon the copyright registration Nos. PA0002384079, PA0002385184, PA0002385180, PA0002385177, PA0002385169, PA0002385154, PA0002385182; or in the alternative, be required to assign said copyrights to Plaintiff;

5. Defendants be required to pay to Plaintiff such damages as Plaintiff has sustained in consequence of Defendants' infringement of Plaintiff's copyright and Defendants' unfair trade practices and unfair competition, and to account for:

    a. All gains, profits and advantages derived by Defendants through such unfair trade practices and unfair competition; and

    b. All gains, profits and advantages derived by Defendants through Defendants' infringement of Plaintiff's copyright, or such damages as to the court shall appear proper within the provisions of the copyright statutes, but not less than $250,000,000.

6. Defendants be required to deliver to be impounded during the pendency of this action all physical and digital copies of the television series entitled ROP in their possession or under their control and to identify and deliver up for destruction all infringing copies;

7. Defendants be required to pay Plaintiff damages sustained by Plaintiff by reason of Defendants' acts, in the sum of $250,000,000 and to account to Plaintiff for all gains, profits and advantages derived from their acts, or any of them;

8. Defendants to pay all statutorily appropriate damages to Plaintiff for their infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 504;

9. Defendants to pay to Plaintiff the costs of this action and reasonable attorney's fees to be allowed Plaintiff by the court pursuant to 17 U.S.C. § 505;

10. Plaintiff have such other and further relief as is just.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 11, 2023

Respectfully submitted,

By: *Katie Charleston*

Katie Charleston Law, PC
Katie Charleston, Esq. Attorney for Plaintiff

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES**

14

## VERIFICATION

I am the plaintiff in this action. I have read the foregoing amended complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: Jul 11, 2023          Signed: *Demetrious Polychron*
                                     Demetrious Polychron (Jul 11, 2023 04:59 PDT)
                                     Demetrious Polychron
                                     Plaintiff