LACY H. ("Lance") KOONCE, III (*admitted pro hac vice*)
GILI KAREV (Bar Number: 348774*)*
**KLARIS LAW**
29 Little West 12 St.
New York, NY 10014
Telephone:(917) 612-5861
Email:     lance.koonce@klarislaw.com

Attorneys for Defendants the Tolkien Estate Limited, the Tolkien Trust and Simon Tolkien.

**IN THE UNITED STATES DISTRICT COURT**

**THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| DEMETRIOUS POLYCHRON<br><br>                Plaintiff,<br><br>        v.<br><br>JEFF BEZOS, an Individual, JENNIFER SALKE, An Individual, SIMON TOLKIEN, an Individual, PATRICK MCKAY, an Individual, JOHN D. PAYNE, an Individual, AMAZON STUDIOS LLC, a California Limited Liability Company, AMAZON CONTENT SERVICES, LLC, a Delaware Limited Liability Company, THE TOLKIEN ESTATE LIMITED, THE TOLKIEN TRUST, and DOES 1-100,<br><br>                Defendants. | Case No. 2:23-cv-02831-SVW-E<br><br>**DEFENDANTS THE TOLKIEN ESTATE LIMITED, THE TOLKIEN TRUST AND SIMON TOLKIEN'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  August 28, 2023<br>Time: 1:30pm<br>Place: Courtroom 10A<br><br>Complaint Filed:  April 4, 2023<br>Amended Complaint Filed:  July 13, 2023 |

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    **NOTICE IS HEREBY GIVEN THAT**, pursuant to Federal Rules of Civil

3    Procedure 9 and 12(b)(6), on August 28, 2023, at 1:30 p.m. or as soon as the matter

4    may be heard before the Honorable Stephen V. Wilson in Courtroom 10A of the

5    above-entitled court, located at 350 W. 1st Street, Courtroom 10A, 10th Floor, Los

6    Angeles, California 90012, Defendants the Tolkien Estate Limited, the Tolkien Trust

7    and Simon Tolkien (the "Tolkien Defendants") will move this Court to dismiss

8    Plaintiff Demetrious Polychron's First Amended Complaint for Copyright

9    Infringement [Doc. 32] ("FAC") for failure of the FAC to state a claim on which

10   relief can be granted. The motion will be based upon this Notice; the attached

11   Memorandum of Points and Authorities; the Declaration of Lacy H. Koonce, III

12   ("Koonce Decl."), with Exhibits A-H; the Notice of Lodging and concurrently-

13   lodged Exhibit A, the Request for Judicial Notice; on all matters of which this Court

14   may take judicial notice; on all pleadings, files and records in this action; and on

15   such authorities and arguments that may be presented in any reply and at any hearing

16   on this motion.

17                           **CERTIFICATE OF CONFERENCE**

18          This motion is made following the conference of counsel pursuant to L.R. 7-

19   3 which took place on June 23, 2023, and again on July 18, 2023.

20                             **CERTIFICATE OF SERVICE**

21          I certify that this document will be filed through the ECF system and will be

22   sent electronically to the registered participants as identified on the Notice of

23   Electronic Filing (NEF) and paper copies will be sent to those indicated as non-

24   registered participants on the date specified below.

25

26

27

28

Dated: July 27, 2023

/s/ Lacy H. Koonce, IIII
Lacy H. Koonce, IIII
Gili Karev
**KLARIS LAW PLLC**
29 Little W 12th Street
New York, NY 10014
Telephone: (917) 612-5861
Email:
lance.koonce@klarislaw.com

Kevin Vick
**JASSY VICK**
355 S Grand Ave #2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Email: kvick@jassyvick.com

*Attorneys for Defendants the Tolkien Trust, the Tolkien Estate Limited, and Simon Tolkien*

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES_____4-6

INTRODUCTION_____7-8

BACKGROUND_____9-12

   A. The Lord of the Rings _____9

   B. The Lord of the Rings: Rings of Power _____10

   C. The Fellowship of the King_____11

LEGAL STANDARD_____12-13

PLAINTIFF FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT
_____13

   A. Plaintiff is Suing on a Version of His Work Not Subject to a Copyright
      Registration _____14

   B. Plaintiff's Work is an Unauthorized Derivative That is Not Copyrightable as
      a Matter of Law_____15-19

   C. Plaintiff Does Not Plausibly Plead Copying by the Tolkien Defendants
   _____19-24

      i.   The Tolkien Defendants Did Not Create the Amazon Series _____19

      ii.  The Infringing Work and the Amazon Series are Not Substantially
           Similar_____20

PLAINTIFF FAILS TO STATE A CLAIM FOR CONTRIBUTORY
INFRINGEMENT AGAINST THE TOLKIEN DEFENDANTS _____24

PLAINTIFF'S UNFAIR COMPETITION CLAIM IS PREEMPTED BY
FEDERAL COPYRIGHT LAW_____25

CONCLUSION_____27

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C. 10-05696 CRB, 2011 WL 2690437 (N.D. Cal. July 8, 2011) _____26

*Anderson v. Stallone*, No. 87-0592 WDKGX, 1989 WL 206431 (C.D. Cal. Apr. 25, 1989) _____7, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) _____12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) _____12

*Berkic v. Crichton*, 761 F.2d 1289 (9th Cir.1985) _____21

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013)_____13

*Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108 (N.D. Cal. 2010)_____27

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) _____20, 21

*Christianson v. W. Pub. Co.*, 149 F.2d 202 (9th Cir. 1945) _____13, 16

*Cinq Music Grp., LLC v. Create Music Grp., Inc.*, No. 222CV07505JLSMAR, 2023 WL 4157446 (C.D. Cal. Jan. 31, 2023) _____26

*Complex Media, Inc. v. X17, Inc.*, No. 18-07588, 2019 WL 2896117 (C.D. Cal. Mar. 4, 2019)_____26

*Desire, LLC v. Manna Textiles Inc.*, 986 F.3d 1253 (9ᵗʰ Cir. 2021)_____8

*Esplanade Prods., Inc. v. Walt Disney Co.,* 2017 WL 5635027 (C.D. Cal. Nov. 8, 2017) _____13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) _____13

*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768 (9th Cir. 2018)_____13

*Fonovisa, Inc. v. Cherry Auction*, Inc., 76 F.3d 259 (9th Cir.1996) _____24

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 203 L. Ed. 2d 147, 139 S. Ct. 881 (2019) _____14

*Frasier v. Adams-Sandler*, Inc., 94 F.3d 129, 39 U.S.P.Q.2d 1957 (4th Cir. 1996) _____19

*Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072 (9th Cir. 2006) ___21

*Goldfinger v. Israel,* No. CV16-3651-AB(SSx), 2017 WL 11633731 (C.D. Cal. May 17, 2017) _____21

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003) _____13

*In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796 (N.D. Cal. 2005) _____24

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir.1994)_____22

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140 (9th Cir. 2003) _15

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) _____23

*LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010)_____13

*McMahon v. Prentice Hall*, Inc., 486 F. Supp. 1296 (E.D.Mo.1980) _____23

*Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir.2002) _____21

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ____24

*Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009 (C.D. Cal. 2022) _____21

*Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004)_____26

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir.2007)_____24

*Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000) _____16

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) _____15

*Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234 (C.D. Cal. 2003) _____15

*Star Fabrics, Inc. v. Zulily LLC*, No. CV 17-8358 PSG (MRWx), 2018 WL 5264360 (C.D. Cal. Apr. 17, 2018)_____21

*Stardock Sys., Inc. v. Reiche*, No. C 17-07025 SBA, 2019 WL 8333514 (N.D. Cal. May 14, 2019)_____26

*Stevens v. Vodka & Milk, LLC*, No. 17-8603, 2018 WL 11222927 (S.D.N.Y. Mar. 15, 2018) _____26

*Stewart v. Abend*, 495 U.S. 207 (1990) _____21

*The Tolkien Trust et al v. Demetrious Polychron*, 23-cv-04300-SVW-E (2023) __7

*Wild v. NBC Universal, Inc.*, 513 Fed. Appx. 640 (9th Cir. 2013) _____13

*Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007) _____13

**Rules**

17 U.S.C. § 103(b) _____20, 21

17 U.S.C. § 106 _____15, 19

17 U.S.C. § 410(c) _____15

Digital Millenium Copyright Act, 17 U.S.C. §512 _____8

**Treatises**

Nimmer, Melville B. *Nimmer on Copyright : a Treatise on the Law of Literary, Musical and Artistic Property, and the Protection of Idea*s. New York: M. Bender, 1978. § 2.12 at 2–177 _____15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

In a climactic scene in *The Fellowship of the Rings,* book one of Professor J.R.R. Tolkien's classic *The Lord of the Rings* ("TLOTR"), the wizard Gandalf stands upon the Bridge of Khazad-dûm and confronts an enemy from the depths of Moria and speaks these words: "You cannot pass."

Federal Courts play an analogous – if less dramatic – role in copyright infringement cases. The court is tasked with acting as gatekeeper to eliminate baseless claims, including determining whether a plaintiff holds a valid copyright interest, as well as assessing substantial similarity under the "extrinsic test" for infringement. Claims that fail these threshold tests will not pass and must be dismissed.

Plaintiff Demetrious Polychron's infringement claim is doomed for a simple reason: as a matter of law, Plaintiff does not hold a valid copyright in the work he claims has been infringed. Plaintiff's book *The Fellowship of the King* (the "Infringing Work") is an unauthorized derivative sequel of J.R.R. Tolkien's original copyrighted works and, under clear precedent, is not entitled to any copyright protection. *See*, *e.g.*, *Anderson v. Stallone*, No. 87-0592 WDKGX, 1989 WL 206431, at *8 (C.D. Cal. Apr. 25, 1989).

Indeed, the entire premise of Plaintiff's lawsuit is facially absurd. As set forth in the related action commenced by the Tolkien Estate Limited and the Tolkien Trust (collectively, the "Estate"), *The Tolkien Trust et al v. Demetrious Polychron*, 23-cv-04300-SVW-E (2023) (the "Related Case"), Plaintiff flagrantly authored and sold his self-proclaimed sequel to TLOTR in contradiction of the Estate's express wishes, and in contravention of the Estate's rights. Yet Plaintiff – apparently misbelieving that the best defense is a good offense – has the temerity to claim not only that he

holds copyright in the Infringing Work, but that the Estate and its authorized licensees have infringed *his* work.[1] This claim cannot legally stand.

Plaintiff's claims are fatally flawed for multiple additional reasons. First, Plaintiff's claim for direct copyright infringement against the Estate and Simon Tolkien (the "Tolkien Defendants") fails because he has not alleged that the Estate is the creator, copyright proprietor or is otherwise responsible for any aspect of the purportedly infringing television series entitled *The Lord of the Rings: The Rings of Power* (the "Amazon Series").

Second, even assuming *arguendo* any portion of his book is copyrightable, Plaintiff cannot demonstrate that the Amazon Series is substantially similar to the Infringing Work. *Desire, LLC v. Manna Textiles Inc*., 986 F.3d 1253, 1260 (9th Cir. 2021).

Third, Plaintiff cannot demonstrate that the Tolkien Defendants are contributorily liable for infringement by another party. As discussed above, Plaintiff cannot prove direct infringement by *any* party because he holds no copyright in the Infringing Work, which is fatal not only to his direct infringement claims, but also as to secondary liability. Plaintiff makes one vague, unsupported allegation that Simon Tolkien "reviewed" Plaintiff's manuscript, First Amended Complaint ("FAC") ¶ 29, and one similarly unsupported and speculative allegation that the Estate "shared and sold" "characters, stories and images" from the Infringing Work to creators of the Amazon Series. FAC ¶ 43-44. Tellingly, Plaintiff fails to describe a single such allegedly infringing character, story or image with any detail, nor provide a single shred of factual support for this extraordinary assertion.

Finally, Plaintiff's unfair competition claim based on valid take-down notices sent to online retailers is entirely preempted by the federal Digital Millennium Copyright Act, 17 U.S.C. § 512. Clear precedent confirms that that the federal

---

[1] Whether the Infringing Work is an infringing derivative is also central to the Related Case, and the Tolkien Defendants intend to make an early dispositive motion in that case.

interest in creating remedies to ensure DMCA compliance "preclude[s] enforcement of state laws on the same subject." Plaintiff's remedy was to provide DMCA counter-notifications, not invoke state law.

## II.    BACKGROUND

### A. *The Lord of the Rings*

J.R.R. Tolkien's *The Lord of the Rings* is widely regarded as one of the greatest works of literary fantasy ever written. Often called a trilogy, it is in fact a single novel comprised of three books: *The Fellowship of the Ring* and *The Two Towers* (1954), and *The Return of the King* (1955) (collectively, "*TLOTR*"). *TLOTR* is a sequel to *The Hobbit*, and together with the posthumously published *The Silmarillion*, *Unfinished Tales* and other works, make up the Tolkien "Legendarium" set in the fictional "Middle-earth" (collectively, the "Tolkien Canon"). The Tolkien Canon includes extensive notes and drafts by Tolkien on characters and events, many later published in the 12-volume *The History of Middle-Earth*.

*TLOTR* is estimated to have been translated into 57 languages and has sold over 150 million copies worldwide. It remains one of the most popular and influential novels ever published in the English language. A hard copy of *TLOTR* is submitted herewith as Exhibit A to the Declaration of Lacy H. Koonce, III, dated July 27, 2023 ("Koonce Decl."), and pursuant to the concurrently filed Notice of Lodging.[2]

*TLOTR* tells the story of a fellowship of unlikely heroes comprised of representatives of each of the free races of Middle-earth: Elves, Dwarves, wizards, hobbits, and men. Long ago, in the Second Age, the Dark Lord Sauron forged a Ring of Power to control Middle-earth, but the Ring was stolen and thought to be lost forever. Thousands of years later, in the Third Age, the Ring ends up in the

---

[2] *TLOTR*, along with other Tolkien works and Plaintiff's manuscripts, are referenced in the FAC and incorporated therein by reference. FAC ¶¶ 25-30. *See* Tolkien Defendants' Request for Judicial Notice ("RJN"), ¶¶ 1-3.

possession of an unassuming hobbit named Bilbo Baggins, who bequeaths the Ring to his nephew, Frodo. Together with friends Samwise Gamgee, Pippin Took, and Merry Brandybuck, Frodo must journey across Middle-earth to the only place the Ring can be destroyed, Mount Doom in Mordor.

To protect the integrity of Professor Tolkien's works, the Estate has been extremely selective in granting licenses to create authorized derivatives. As Professor Tolkien himself never elected to write a sequel to *TLOTR*, the Estate honors his legacy by refraining from licensing this right. In select instances, the Estate has authorized creation of certain derivative and ancillary works for the purpose of reaching new generations of fans worldwide and helping maintain the enduring popularity of Professor Tolkien's original literary works. The Amazon Series, as a prequel to *TLOTR* that expands on its largely unexplored appendices, is one such select derivative.

**B**.     ***The Lord of The Rings: Rings of Power***

In November 2017, the Estate licensed Amazon Studios the right to develop a television series derived from Professor Tolkien's works. FAC ¶ 29. As was widely reported in early 2019,[3] the Amazon Series is set in the "Second Age" of Middle-earth, depicts previously un-portrayed events preceding *TLOTR*, and centers around the forging of the Rings of Power. The Amazon Series expands upon Tolkien's descriptions to portray major events in the Second Age, which begins after Sauron's master, Morgoth, has been defeated, and concludes with the battle between Sauron's forces and the Last Alliance of Elves and Men. During that battle, a man named Isildur will cut the Ring from Sauron's finger, thus defeating him, but instead of destroying the Ring, Isildur will take it; he then will be killed, and the Ring will be

---

[3] *See, e.g.*, "Amazon's Lord of the Rings Series Confirmed to Be Set in the Second Age," IGN News, March 7, 2019 (https://www.ign.com/articles/2019/03/07/amazons-lord-of-the-rings-series-confirmed-to-be-set-in-the-second-age); "What to expect from Amazon's Lord of the Rings show and its Second Age setting," Entertainment Weekly, April 17, 2019 (https://ew.com/tv/2019/04/17/amazon-lord-of-the-rings-show-second-age/). *See* RJN ¶¶ 11-12.

lost. *TLOTR* begins when, thousands of years later, the Ring is found and the task of destroying it falls to Frodo.

Filming of the first season of the Amazon Series began in February 2020, and it premiered on September 1, 2022.[4] *See* Exhibit 1 to the Declaration of Amanda Levine filed in support of the Amazon Defendants' Motion to Dismiss.

## C.   *The Fellowship of the King*

By his own account, on November 21, 2017, Plaintiff reached out to Simon Tolkien, "explaining his love of the LOTR books [and] describing his authorship of" the Infringing Work. FAC ¶ 26. Plaintiff explained that he had reviewed Tolkien's unpublished papers, which sparked his decision to write the Infringing Work. A copy of the letter is found at Exhibit B to the Koonce Declaration. *See also* RJN ¶ 5. Plaintiff states: "For the last three years, I've been doing the most obvious hardest thing in the world: I've been writing the obvious pitch-perfect sequel to 'The Lord of the Rings.' I know I shouldn't have, but I really didn't have a choice." *Id.* Plaintiff did not provide Simon Tolkien (who did not answer the inquiry) a copy of his manuscript, but the same day Plaintiff applied to the U.S. Copyright Office to register the Infringing Work. *See* Koonce Decl., Ex. F (the "Deposit Copy").

Two years later, on November 7, 2019, Plaintiff's counsel contacted the Estate seeking approval to publish his sequel. FAC ¶27; *see* Koonce Decl., Ex. C; RJN ¶ 6. ("Mr. Polychron would like to use the intellectual property created by J.R.R. Tolkien to create and publish a seven-book sequel to The Hobbit and The Lord of the Rings. Mr. Polychron has already written the first book in this seven-book series and he is in the process of writing the second."). Counsel provided a statement from Plaintiff

---

[4] *See, e.g.,* "Massive production underway for Lord of the Rings in Auckland," Stuff, Feb. 26, 2020 (https://www.stuff.co.nz/entertainment/film/119761019/massive-production-underway-for-lord-of-the-rings-in-auckland); "LOTR: The Rings Of Power' Forges Biggest Premiere Viewership Ever For Amazon Prime Video," Deadline, Sept. 3, 2022 ("https://deadline.com/2022/09/lord-of-the-rings-viewership-rings-of-power-amazon-jeff-bezos-tolkien-1235107279/). *See* RJN ¶¶ 13-14.

in which he noted that the book *"*continue[d] he history of Middle-earth and is set in the Tolkien universe." Koonce Decl., Ex. C; RJN ¶ 6. The Estate immediately replied that it would not grant the right to publish a sequel. FAC ¶27; *see* Koonce Decl., Ex. D; RJN ¶ 7.

On December 24, 2019, ignoring the Estate's wishes, Plaintiff appeared at Simon Tolkien's personal residence and delivered a manuscript of the Infringing Work, with a cover letter. FAC ¶ 28; *Ssee* Koonce Decl., Ex. E;  RJN ¶ 8. Plaintiff wrote: "When I first started writing, I had no plan nor any real knowledge of what I was getting myself into. I only knew that I loved this world and it seemed to me the Holy Grail of fantasy adventure; the thing that everyone wanted someone to do: to write the sequel to The Lord Of The Rings", [but] "now that it's written, I'm not sure what to do with it [...] I have zero interest in infringing on your rights; the rights of the Estate, [but] I cannot conceive of deleting this manuscript."

Simon Tolkien returned the manuscript in an envelope Plaintiff provided. FAC ¶ 28. Plaintiff does not allege that Tolkien made copies or provided the manuscript to any other party, nor allege facts indicating that Tolkien read the manuscript. Despite Plaintiff's stated aversion to infringing the Estate's rights, he then "advised" Tolkien "he would publish TFOTK, and an additional six book series, independently." FAC ¶ 28. On September 22, 2022, just after the premiere of the Amazon Series, Plaintiff published the Infringing Work. FAC ¶ 23; *see* Koonce Decl., Ex. G (manuscript of September 22, 2022 version of the Infringing Work). When the Estate learned that Plaintiff was marketing and selling his Infringing Work to the public, it demanded he immediately cease doing so. Rather than complying, Plaintiff filed this lawsuit. The Estate then filed the Related Case on June 1, 2023.

### III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleading facts "merely consistent with" a defendant's liability is not sufficient. *Id.* The court need not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (quoting *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003)). The complaint must contain sufficient concrete facts to elevate plaintiff's right to relief from merely "speculative" to "plausible." *Twombly*, 550 U.S. at 555, 570.

Where, as here, the works at issue are incorporated by reference into the pleadings and are "before the court, capable of examination and comparison," the court can properly decide infringement on a motion to dismiss. *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945). "[T]here is no logical reason to delay the inevitable when the Court already has the alleged infringed and infringing work before it on a motion to dismiss." *Esplanade Prods., Inc. v. Walt Disney Co.,* 2017 WL 5635027, at *8 (C.D. Cal. Nov. 8, 2017); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007). A court may "take judicial notice of generic elements of creative works," as well as "documents [such as copies of works] which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'" *Id.* (internal citation omitted). Courts routinely grant motions to dismiss infringement claims where it is apparent from the pleadings that the works are not, for instance, substantially similar as a matter of law. *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63-65 (2d Cir. 2010); *Wild v. NBC Universal, Inc.*, 513 Fed. Appx. 640, 641 (9th Cir. 2013).

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT

To state a claim for direct copyright infringement, Plaintiff must allege facts showing "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768,

774 (9th Cir. 2018) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Under the *Iqbal*/*Twombly* standard, the facts supporting these elements must be plausibly pleaded. *Id.* Here, Plaintiff cannot demonstrate either element, because (a) he can hold no copyright interest in an infringing derivative work as a matter of law; (b) he does not plausibly plead any direct infringement by the Tolkien Defendants; and (c) the Infringing Work and the Amazon Series are not substantially similar.

## A.  *Plaintiff is Suing on a Version of His Work not Subject to a Copyright Registration*

Plaintiff's only copyright registration is for the Deposit Copy, a version of his Infringing Work from November 2017. The version published in September 2022 differs significantly from the Deposit Copy in that, *inter alia*, the published version contains cover art and cover copy, does not contain a prologue, and includes significant additional text not found in the registered version. *Compare* Koonce Decl., Ex. F *to* Koonce Decl., Ex. G-H. To the extent Plaintiff is relying on a version that has not been registered with the Copyright Office, this is not permitted. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020) (the scope of a copyright is limited by the deposit copy).

There is no evidence Plaintiff has ever registered the cover artwork or prologue from the September 2022 version of his book, both of which he nevertheless claims were infringed. As such material was never registered as is required to commence a claim for infringement,  he cannot base an infringement claim on them.  *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 203 L. Ed. 2d 147, 139 S. Ct. 881 (2019); *Fisher v. Nissel*, 2022 WL 16961479, at *5 (C.D. Cal. Aug. 15, 2022). Further, Defendants should not be forced to parse the pleading to determine what portions of his claims *do* relate to copyrighted material.

**B.** **<u>Plaintiff's Work is an Unauthorized Derivative That is Not</u>** **<u>Copyrightable as a Matter of Law</u>**

While a copyright registration is "prima facie evidence of the validity of the copyright and the facts stated in the certificate," 17 U.S.C. § 410(c), to rebut this presumption a defendant "must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1144 (9th Cir. 2003). Here, it is clear from the face of the FAC and the text of the books themselves that as author of an infringing derivative, Plaintiff cannot – as a matter of law under governing precedent in this Circuit – hold a copyright interest in the Infringing Work, much less assert a copyright claim against proprietors of the work from which his book derives.

Under 17 U.S.C. § 106(2), only the holder of a copyright has the exclusive right to prepare or authorize third parties to prepare derivative works based on the copyrighted work. A party who creates a derivative work without permission cannot obtain any copyright interest in the derivative. In *Anderson v. Stallone*, No. 87-0592 WDKGX, 1989 WL 206431, at *8 (C.D. Cal. Apr. 25, 1989), this Court evaluated whether a spec film script written without authorization as a sequel to "Rocky III" was capable of protection, where the script author then sued Sylvester Stallone and others involved in "Rocky IV" for infringement. The Court determined that it "need not determine whether the characters in Anderson's treatment are substantially similar to Stallone's characters, as it is uncontroverted that the characters were lifted lock, stock, and barrel from the prior Rocky movies. By retaining the names, relationships and building on the experiences of these characters from the three prior Rocky movies, 1 M. Nimmer, § 2.12 at 2–177 (copying names of characters is highly probative evidence of infringement), Anderson's characters "are not merely substantially similar to Stallone's, they *are* Stallone's characters." *Id* at 8 (emphasis added). The Court continues, "Anderson's bodily appropriation of these characters infringes upon the protected expression in the Rocky characters and renders his work

an unauthorized derivative work." 1 Nimmer, § 2.12 at 2–171*; see also Sobhani v. @Radical.Media Inc*., 257 F. Supp. 2d 1234 (C.D. Cal. 2003); *Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000).

Significantly, once the *Stallone* Court found that the script was an infringing derivative, it concluded that the *entirety* of that infringing work was incapable of copyright protection, including any original elements that had been added to the script. *Stallone* at 8-9.

As discussed below, review of the Infringing Work alongside *TLOTR* conclusively demonstrates that it is an infringing derivative sequel. *Compare* Ex. A to Ex. G.[5]  The plot, scenes, sequence of events, characters, locations, mood, pace, and themes in the Infringing Work are lifted directly from *TLOTR* and other works in the Tolkien Canon and carried wholesale into Plaintiff's Infringing Work. Plaintiff bodily appropriates Professor Tolkien's beloved copyrighted characters by lifting them "lock, stock and barrel" and placing them within Professor Tolkien's Middle-earth. Plaintiff retains the names, relationships, personalities, and builds on the experiences of Professor Tolkien's characters and events from *TLOTR*, including (but not limited to) those of Samwise Gamgee, Tom Bombadil, Aragorn, Arwen, Legolas, Gimli, Galadriel, Elrond, Sauron and hundreds of others. Because of Professor Tolkien's great skill in bringing those characters to vivid life, his main characters have become some of the most cherished characters in literature, complete with complex backstories and motivation. Plaintiff relies on the reader's familiarity with these fully rendered elements to continue the story from the precise moment that Professor Tolkien elected to end his telling of the tale.

The very first lines of the Infringing Work make clear that this was Plaintiff's explicit intent: at the close of *TLOTR*, Professor Tolkien describes Samwise Gamgee returning home to Bag End to his wife and daughter: "And Rose drew him in, and

---

[5] As the FAC incorporates by reference both *TLOTR* and the Infringing Work, this Court is entitled to review both on this motion. *See, e.g., Christianson v. W. Pub. Co.*, 149 F.2d 202 (9th Cir. 1945).

set him in his chair, and put little Elanor upon his lap. And he drew a deep breath. 'Well, I'm back,' he said." Koonce Decl., Ex. A, p. 1031.

The Infringing Work picks up two decades after this scene and continues the story of Rose, Sam and Elanor, and all of the other characters who remain in Middle-earth at the close of *TLOTR,* on an almost identical journey through that very same universe. It begins in the same home, shire and region where *TLOTR* leaves off, in the 22nd year of the reign of High King Elessar, previously known as Aragorn. Just as in the opening scene of *TLOTR*, on the eve of a poignant birthday (Elanor's society debut in the Infringing Work; Frodo and Bilbo's birthdays in *TLOTR*), a wizard comes to the Shire. Alatar, who is mentioned in the Tolkien Canon but does not play a key role, is one of the brethren of Gandalf and acts as a stand-in for Gandalf in the Infringing Work. He, like Gandalf, is in dire need of hobbit assistance as the existence of more rings of power has been brought to light, which places Middle-earth in great danger in precisely the same way as the discovery of the One Ring sets in motion the narrative in *TLOTR*. It is the very definition of a derivative sequel.

In a scene derivative of Gandalf's visit to Frodo near the start of *TLOTR*, Alatar – whose character traits Plaintiff borrows from Gandalf – recruits a reluctant Sam and Rosie, but Elanor impulsively decides to assist, leading to two groups of hobbits fleeing the Shire. This duplicates the flight of Frodo and his companions from the Shire in *TLOTR*. Whereas Frodo and his group are chased by evil Nazgûl, Sam and Rosie are chased by evil "Orcelven" (a combination of two Tolkien beings, Orcs and Elves) on the road and flee into the Old Forest. In *TLOTR*, Frodo and his companions end up in the Old Forest, where Frodo is saved from an evil tree by Tom Bombadil; in the Infringing Work, Sam and Rosie are saved by Bombadil during a confrontation with the Orcelven leader after Rosie chants a summoning rhyme

taught to Sam in *TLOTR*.[6] Sam and Rosie, like Frodo and his companions, then spend the night with Bombadil and his companion Goldberry before making their way to Bree, staying at The Prancing Pony and attended by owner Barliman Butterbur. While there, in a scene similar to one in *TLOTR* in which the hobbits meet Aragorn at The Prancing Pony. the hobbits (including Elanor and her friends) make the acquaintance of a mysterious "grim young man in a long grey cloak," who turns out to be Crown Prince Eldarion, Aragorn's son. Eldarion then forms a "Fellowship of the King" to seek the remaining rings and using them to defeat the enemy; in *TLOTR*, the "Fellowship of the Ring" forms later, in Rivendell. The Infringing Work also – as Plaintiff himself states (*see* Koonce Decl., Ex. A, pp. vi) – incorporates verbatim copying of at least 15 passages from the Tolkien Canon; uses Middle-earth and dozens of specific settings described in *TLOTR* as settings in the Infringing Work;[7] and includes hundreds of original characters from *TLOTR*, including major characters central to the story being told.

Plaintiff has admitted as much. In letters cited in the FAC and incorporated by reference therein, Plaintiff has proudly stated that the Infringing Work is a "sequel" to *TLOTR* that deliberately seeks to "stick as close to canon as I could." Koonce Decl., Ex. B (describing book as "pitch-perfect sequel to 'The Lord of the Rings.'"); *see also* Koonce Decl., Ex. C ("a seven-book sequel to The Hobbit and The Lord of the Rings"; "continues the history of Middle-earth and is set in the Tolkien universe"; "continue the adventures of the people in Middle-earth"); Ex. E ("write the sequel to The Lord Of The Rings"). His public promotional materials also indicate that his book is a derivative sequel. *See*, *e.g.*, Fractal Books website,

---

[6] This is also an example of Plaintiff lifting verbatim passages from *TLOTR*. *Compare* Koonce Decl., Ex. A, p. 134 *to* Koonce Decl., Ex. G, p. 96.

[7] In the first two paragraphs of the Infringing Work alone, Plaintiff mentions the Shire, Hobbiton, Bucklebury, Tuckborough, the Four Farthings, Bag End, Bree, Arnor, Gondor, Tookland, Buckland, and the Brandywine Bridge. Throughout the Infringing Work, Plaintiff sets action in or mentions literally hundreds of settings from *TLOTR*.

https://www.fractalbooks.com/story/story-behind-the-book-the-fellowship-of-the-king/ ("the canon of the Legendarium has been scrupulously followed"; "indistinguishable in origin and spirit from the originals."); RJN ¶ 10.

## C. *Plaintiff Does Not Plausibly Plead Copying by the Tolkien Defendants*

### i. The Tolkien Defendants Did Not Create the Amazon Series

A "direct" infringer is anyone who directly exercises any of the copyright owner's exclusive rights without permission. 17 U.S.C. § 106 *see also Frasier v. Adams-Sandler*, Inc., 94 F.3d 129, 39 U.S.P.Q.2d 1957 (4th Cir. 1996) (company's refusal to return plaintiff's copyrighted photographs not an act of direct infringement, since it did not involve unauthorized copying, public display, or other infringing use of material). Here, Plaintiff does not plead a single fact that the Tolkien Defendants had any responsibility for or control over creation of the Amazon Series other than as licensors of *TLOTR*. There are no allegations that Simon Tolkien (or the Estate) ever shared a copy of the Infringing Work with the creators of the Amazon Series; provided specific content to them; or otherwise reproduced, made derivatives of, distributed, displayed, performed, or exploited any part of the Infringing Work as required to maintain a claim for direct infringement.

Plaintiff alleges only that he provided a manuscript of the Infringing Work to Simon Tolkien on December 24, 2019, and that Simon Tolkien returned the manuscript to Plaintiff upon request. FAC ¶ 28-29. While Plaintiff makes an entirely speculative assertion that Simon Tolkien "reviewed" Plaintiff's manuscript (FAC ¶ 29), reviewing a manuscript is not a copyright violation, and in any event other allegations in the FAC contradict this unsupported assertion, including that Plaintiff "received no response" from Tolkien after requesting such review (FAC ¶ 26). Plaintiff also makes an unsupported, speculative allegation that the Estate "shared and sold" "characters, stories and images" from the Infringing Work to the creators of the Amazon Series, but this is not a plausible allegation because it is unsupported

by any facts whatsoever.[8] As Plaintiff does not claim that the Tolkien Defendants made copies of the manuscript, it is unclear how they could have "shared" characters or other materials with others at all.

As licensors, the Tolkien Defendants did not create, nor are they proprietors of any copyright interest in, the Amazon Series.[9] It is no surprise, then, that Plaintiff cannot identify a single scene, character, line of dialogue or other element in the Amazon Series that the Tolkien Defendants directly reproduced, created or contributed, much less any that purportedly infringe Plaintiff's supposed copyright interest in the Infringing Work. Plaintiff has not plausibly alleged that the Tolkien Defendants infringed any exclusive copyright interest even purportedly held by Plaintiff.

ii.   <u>The Infringing Work and the Amazon Series are Not Substantially Similar</u>

Even assuming *arguendo* any portion of the Infringing Work could be entitled to copyright protection, Defendants are still entitled to dismissal because Plaintiff has failed to plausibly allege (1) any protectable elements of the Infringing Work; and (2) that such elements are substantially similar to elements of the Amazon Series. *See Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). First, the allegedly infringed elements Plaintiff identifies in his Exhibit B to the FAC are either copied from the Tolkien Canon or are non-copyrightable themes or ideas. Second, any apparent similarity between the two works is based entirely on the fact that both works derive from those of Professor Tolkien.

---

[8] In the unlikely event this matter proceeds beyond this initial dispositive motion, the Tolkien Defendants will demonstrate conclusively that Simon Tolkien never reviewed Plaintiff's manuscript, and never provided it (or any material in it) to anyone.

[9] Under well-established law, the owner of an *authorized* derivative work holds a copyright interest in additional, original material in the derivative work; the original author/owner retains a copyright interest in the underlying work. 17 U.S.C. § 103(b).

Courts in this Circuit employ a two-part analysis to determine whether two works are substantially similar – "an extrinsic test and an intrinsic test." *Star Fabrics, Inc. v. Zulily LLC*, No. CV 17-8358 PSG (MRWx), 2018 WL 5264360, at *2 (C.D. Cal. Apr. 17, 2018). This Court has held that "[o]n a motion to dismiss, only the extrinsic test is relevant." *Id* at 2; *see also Funky Films, Inc. v. Time Warner Entm't Co*., 462 F.3d 1072, 1077 (9th Cir. 2006). A plaintiff who cannot satisfy the extrinsic test cannot show substantial similarity as a matter of law, because both tests must be satisfied. *See Goldfinger v. Israel,* No. CV16-3651-AB(SSx), 2017 WL 11633731 (C.D. Cal. May 17, 2017).

In applying the extrinsic test, the Courts must compare "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir.1985). "[P]rotectable expression includes the specific details of an author's rendering of ideas." *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir.2002). The copyright in an (authorized) derivative work in any event covers only the additions, changes, or other new material appearing for the first time in the work. 17 U.S.C. § 103(b) and does not extend to any pre-existing materials. *Stewart v. Abend*, 495 U.S. 207, 223 (1990). Before applying the extrinsic test, therefore, the court "must filter out and disregard the non-protectable elements in making its substantial similarity determination," keeping in mind that "[c]opyright law only protects expression of ideas, not the ideas themselves." *Cavalier v. Random House, Inc*., 297 F.3d 815, 822 (9th Cir. 2002) (citation omitted). Further, "material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject)" also are not protected. *Milkcrate Athletics, Inc. v. Adidas Am., Inc*., 619 F. Supp. 3d 1009, 1020 (C.D. Cal. 2022). Once unprotectable elements are filtered out, the Court must determine whether there are any "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works". *Funky Films*, at

1077 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir.1994)).

Here, both works are set in Middle-earth and contain narratives centered around the fight between good and evil, featuring beings found in and/or originated by Professor Tolkien such as Elves, Dwarves, wizards, hobbits and men. Both involve magical rings and the rise of evil tied to those rings. However, these general similarities merely "flow naturally" and directly from the stories, themes and ideas found in the Tolkien Canon. Further, the fact that some characters in the Infringing Work, such as Galadriel, Elrond, and Celebrimbor, also appear in the Amazon Series, cannot form the basis for finding substantial similarity because these characters were first created by Professor Tolkien. While Plaintiff claims that the Infringing Work also includes "distinct and separate characters" from *TLOTR*, FAC ¶ 31, he does not provide a single example, nor point to any character in the Amazon Series resembling any purportedly new characters developed by Plaintiff. Beyond characters, to the extent any specific settings in the Infringing Work are also found in the Amazon Series, these settings first appear in the Tolkien Canon and cannot serve as a relevant similarity under the extrinsic test.

Once any similarities that exist because both works derive from the Tolkien Canon are excluded, it becomes clear that the Amazon Series bears no resemblance to the Infringing Work. The works are set during entirely different "Ages" in the Middle-earth: the Infringing Work occurs at the beginning of the Fourth Age, after the events of *TLOTR*; the Amazon Series occurs in the Second Age, long before the events of *TLOTR*.[10] The first season of the Amazon Series tells of the rise of Sauron, the forging of the Rings of Power, and the seeds of the fall of Numenor; subplots include the discovery by a Harfoot girl of a mysterious, powerful stranger; the

---

[10] Bizarrely, the FAC alleges that the Infringing Work is set "6000 years earlier" (FAC ¶ 20) in the Second Age, but other than flashbacks to such earlier periods, a review of the Infringing Work demonstrates that it is firmly set in the Fourth Age.

friendship between half-Elf Elrond and the Dwarf-prince Durin; a love story between the Elf Arondir and the human Bronwyn; and Galadriel's quest for vengeance, to name a few.  The Infringing Work, by contrast, tells the story of a new evil in the form of a corrupt Elf, Glorfindel, and the search for further rings of power by a "fellowship" of hobbits, men and a Wizard. Notably, Plaintiff identifies *no* plotlines that appear in both works. Further, because the works are set in different Ages, the settings in each largely do not overlap – the Amazon Series is mostly set in Valinor, Numenor, Lindon, Khazad-Dum, Rhovanion and the Southlands of Middle-earth, while the Infringing Work is primarily set in Hobbiton, the Old Forest, Bree, Weathertop, Rivendell, Rohan, Orthanc and Minas Tirith.

Even the few characters from Tolkien who appear in both the Infringing Work and the Amazon Series are portrayed very differently in each. For instance, the character Elrond is depicted in the Amazon Series as a relatively youthful Elf, who is friends with Galadriel and works with Celebrimbor to create a great forge in which the Rings of Power are created. In the Infringing Work, Elrond is not a central character and appears mostly in recitations of historical events. New characters written for the Amazon Series, including Princess Disa and Arondir have no counterpart in the Infringing Work.

In an effort to cobble together similarities where none exist, Plaintiff has provided a list of claimed similarities between the works in Exhibit B to his FAC. Courts have previously held that such lists are "inherently subjective and unreliable," and that it exercises "particular caution where, as here, the list emphasizes random similarities scattered throughout the works." *See McMahon v. Prentice Hall*, Inc., 486 F. Supp. 1296, 1304 (E.D.Mo.1980); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). Even a cursory review of Exhibit B shows that Plaintiff's list is just that: a random assortment of minor, unprotectable elements scattered through the respective works. Most, such as the purported similar character names, an elf visiting the Dwarf kingdom, or a "Númenórean ship," arise directly from Tolkien.

Others, such as "[m]agically induced mountain flood" are mere ideas or *scenes a faire*; and still others, such as differing descriptions of gates/entrances to Khazad-dûm, are mischaracterizations of the respective passages in each work.

When the two works are compared without considering these unprotectable elements, it becomes clear that the remaining aspects of the two works are dissimilar and fail the extrinsic test.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT AGAINST THE TOLKIEN DEFENDANTS

The doctrine of contributory infringement imposes liability where one person "knowingly contributes to the infringing conduct of another." *Fonovisa, Inc. v. Cherry Auction*, Inc., 76 F.3d 259, 261 (9th Cir.1996). The elements of contributory infringement are: (1) direct infringement by a third party; (2) actual or constructive knowledge by defendant that third parties were directly infringing; and (3) a material contribution by defendant to the infringing activities. *See In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 801 (N.D. Cal. 2005). However, when there is no underlying direct infringement, there can be no contributory infringement. *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir.2007) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

In Count II of the FAC, for contributory infringement, Plaintiff alleges that "Defendants" directly infringed Plaintiff's work (FAC ¶ 56), but fails to specify *which* Defendant(s) he asserts is responsible for this predicate direct infringement. Logically, it cannot be all of them because if all Defendants were liable for direct infringement there would be no need for a contributory infringement claim. As noted, in Count I Plaintiff has named only the Tolkien Defendants as direct infringers, so to the extent the Tolkien Defendants are also named as alleged contributory infringers, Plaintiff appears to be alleging that the Tolkien Defendants

contributed to their own infringement, again a logical fallacy. In any event, Plaintiff's pleading does not sufficiently delineate between the parties as to the contributory infringement claim to provide notice to the Tolkien Defendants of the claim being made here.

Even assuming *arguendo* direct infringement by *some* party, Plaintiff has failed to allege a single act by any of the Tolkien Defendants showing (1) actual or constructive knowledge that any other party was directly infringing; or (2) a material contribution to the infringing activities. Plaintiff alleges in entirely conclusory, speculative fashion that the Tolkien Defendants had knowledge of his copyright interest in the Infringing Work because Plaintiff hand-delivered a copy of the manuscript to Simon Tolkien on December 22, 2022, and that the Tolkien Defendants provided the Amazon Defendants with "characters, themes and imagery from [the Infringing Work] if not the work's entirety." FAC ¶¶ 58, 60. However, elsewhere in the pleading Plaintiff alleges that he had Simon Tolkien send back the manuscript (¶ 28), and Plaintiff nowhere alleges that Simon Tolkien made copies of the manuscript or sent it to the Amazon Defendants. Nor does Plaintiff identify what "imagery" Simon Tolkien might have provided, or how this might even have occurred, or how Simon Tolkien could have provided "characters" absent sending the manuscript, much less which ones he supposedly provided. Plaintiff also does not allege what "themes" were purportedly provided to the Amazon Defendants, but in any event themes, like ideas, are not copyrightable. In short, the FAC does not satisfy the *Iqbal/Twombly* standard with respect to these allegations of contributory infringement and should be dismissed.

## V.   PLAINTIFF'S UNFAIR COMPETITION CLAIM IS PREEMPTED BY FEDERAL COPYRIGHT LAW

Plaintiff's unfair competition claim appears based on the Estate's submission of takedown notifications pursuant to the DMCA to online booksellers. Courts have regularly held that the DMCA preempts state law claims arising out of submission

of takedown notices. *Cinq Music Grp., LLC v. Create Music Grp., Inc.*, No. 222CV07505JLSMAR, 2023 WL 4157446, at *2 (C.D. Cal. Jan. 31, 2023); *see also Complex Media, Inc. v. X17, Inc.*, No. 18-07588, 2019 WL 2896117, at *5 (C.D. Cal. Mar. 4, 2019); *Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004) ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law").

As explained in *Stevens v. Vodka & Milk, LLC*, No. 17-8603, 2018 WL 11222927, at *2 (S.D.N.Y. Mar. 15, 2018), the DMCA is a "complex and comprehensive statutory regime that meticulously details the steps that providers must take to avoid liability and that copyright holders must take to enforce their rights." Moreover, "[f]ederal law's near total occupation of the field of copyright law [supports] an inference that the federal interest in creating remedies to ensure compliance with the DMCA is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* at 3 (quotations omitted); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C. 10-05696 CRB, 2011 WL 2690437, at *3-5 (N.D. Cal. July 8, 2011) (infringement notice is a "creature of a federal statutory regime" preempting any state law claim based on submission of such notice).

When interference claims are predicated exclusively on submission of DMCA notices as here (*see* FAC ¶78), they are preempted as pled. In *Stardock Sys., Inc. v. Reiche*, No. C 17-07025 SBA, 2019 WL 8333514, at *4 (N.D. Cal. May 14, 2019), the Court held that despite plaintiff's argument that "the DMCA notices were intended to show but one example of a continuing pattern of improper conduct by Defendants' that interfered with its business relations," this was insufficient to put Defendants on notice as to any other alleged wrongful acts underlying the infringing claim.  Here, Plaintiff alleges no other conduct by the Tolkien Defendants except sending DMCA notices.

Once the DMCA applies, its preemptive effect means that Section 512(f) becomes the sole and exclusive remedy for takedown notifications.[11] Plaintiff's unfair competition claim is preempted and should be dismissed with prejudice.

## VI.  CONCLUSION

Four years ago, Plaintiff wrote to the Estate and stated that he "would like to use the intellectual property created by J.R.R. Tolkien to create and publish a seven-book sequel to The Hobbit and The Lord of the Rings."  His request was refused, yet Plaintiff proceeded to willfully infringe the Estate's copyright interests. Fortunately, copyright law refuses to allow such an infringer to establish a copyright interest in his infringing work. This alone means that Plaintiff's ill-advised claims of infringement "cannot pass."  Moreover, for the reasons set forth above, Plaintiff has not plausibly pled substantial similarity, and cannot make out claims for contributory infringement or unfair competition. Defendants request that the Court dismiss the Complaint in its entirety with prejudice.  *See Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010) (failure to establish substantial similarity is a "defect [that] cannot be cured by amendment").

Respectfully submitted,
KLARIS LAW PLLC
LACY H. KOONCE, III
GILI KAREV

JASSY VICK
KEVIN VICK

By: /s/ Lacy H. Koonce, IIII
Lacy H. Koonce, IIII

---

[11] Plaintiff could have submitted a counter-notification to any take-down he believed improper and cannot now invoke state law where he failed to exercise his federal statutory remedy.

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Tolkien Defendants, certifies that this brief contains 6982 words, which complies with the word limit of L.R. 11-6.1.

July 27, 2023                                        /s/ Lacy H. Koonce, IIII

                                                     Lacy H. Koonce, III