NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
SAMUEL A. TURNER (State Bar No. 338089)
  samturner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

AMANDA LEVINE (*pro hac vice*)
  amandalevine@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Fax:  (212) 489-8340

Attorneys for Defendants
AMAZON STUDIOS LLC, AMAZON
CONTENT SERVICES LLC, PATRICK
MCKAY, JOHN D. PAYNE, JEFF BEZOS,
AND JENNIFER SALKE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIOUS POLYCHRON, an individual<br><br>                    Plaintiff,<br><br>        vs.<br><br>JEFF BEZOS, an individual, JENNIFER SALKE, an individual, SIMON TOLKIEN, an individual, PATRICK MCKAY, an individual, JOHN D. PAYNE, an individual, AMAZON STUDIOS LLC, a California Limited Liability Company, AMAZON CONTENT SERVICES LLC, a Delaware Limited Liability Company, THE TOLKIEN ESTATE, THE TOLKIEN ESTATE LIMITED, THE TOLKIEN TRUST, and DOES 1-100<br><br>                    Defendants. | Case No. 2:23-cv-02831-SVW (Ex)<br><br>**AMAZON DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:     August 28, 2023<br>Time:     1:30 p.m.<br>Dept.:    Courtroom 10A |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 28, 2023, at 1:30 p.m. or as soon as may be heard in Courtroom 10A of the United States District Court for the Central District of California, First Street Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Amazon Studios LLC, Amazon Content Services LLC, Patrick McKay, John D. Payne, Jeff Bezos, and Jennifer Salke (collectively, the "Amazon Defendants") will and hereby do move this Court for an order dismissing the two claims in the First Amended Complaint (the "FAC") asserted against the Amazon Defendants—contributory and vicarious copyright infringement—by plaintiff Demetrious Polychron ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's contributory and vicarious copyright infringement claims against the Amazon Defendants fail for several reasons.  First, Plaintiff cannot establish direct infringement—which is a required element for secondary infringement—because Plaintiff's work is itself an infringement of J.R.R. Tolkien's *The Lord of the Rings* and associated works, and thus not entitled to copyright protection as a matter of law.  Even if it were entitled to such protection, the FAC does not plausibly allege substantial similarity between Plaintiff's work and the Amazon Defendants' original series *The Lord of the Rings: Rings of Power*. Second, Plaintiff's allegations of contributory and vicarious infringement are unintelligible and do not plausibly allege which parties are alleged to have directly infringed and which parties are alleged to have contributed to such infringement or are vicariously responsible for such alleged infringement.  Third, Plaintiff's allegations are additionally deficient because they are nothing more than threadbare, conclusory recitals of those causes of action, which is insufficient to state a valid claim under well-established pleading requirements.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Amanda Levine, the notice of lodging and exhibits,

i

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 18, 2023.

DATED: July 27, 2023

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
AMANDA LEVINE
SAMUEL A. TURNER

By: /s/ Nicolas A. Jampol
Nicolas A. Jampol

Attorneys for the
Amazon Defendants

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... 1

    A.    *The Lord of the Rings* .................................................................... 2

    B.    *Rings of Power* .............................................................................. 3

    C.    *The Fellowship of the King*........................................................... 4

    D.    This Lawsuit .................................................................................... 6

III.   PLAINTIFF CANNOT ESTABLISH DIRECT INFRINGEMENT ............. 7

    A.    Plaintiff's Work is an Infringing Work that is Not Entitled to
        Copyright Protection ....................................................................... 7

    B.    The Works Are Not Substantially Similar As a Matter of Law......... 10

        1.    Substantial Similarity May Be Decided on a Motion to
            Dismiss ................................................................................ 10

        2.    Unregistered Elements Cannot Be Considered By This
            Court .................................................................................... 11

        3.    The Court Must Filter Out Unprotectable Elements................ 12

        4.    The Court Must Filter Out Expression Original to Tolkien..... 12

        5.    The Works' Protected Expression Is Not Substantially
            Similar ................................................................................. 13

            a.    Plot and Sequence of Events......................................... 13

            b.    Theme ........................................................................... 15

            c.    Characters .................................................................... 16

                (1)    Galadriel ........................................................... 16

                (2)    Adar and Glorfindel........................................... 17

                (3)    The "Stranger" and Alatar ................................. 18

                (4)    Theo .................................................................. 19

                (5)    Malva ................................................................ 19

            d.    Setting .......................................................................... 19

            e.    Dialogue ....................................................................... 19

            f.    Mood and Pace.............................................................. 20

IV.   PLAINTIFF CANNOT ESTABLISH SECONDARY
      INFRINGEMENT ........................................................................ 20

V.    CONCLUSION.............................................................................. 21

iv

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Scholastic, Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011) ................................................................. 18

*Anderson v. Stallone*,
   1989 WL 206431 (C.D. Cal. Apr. 25, 1989) ................................................... 8, 9

*Apple v. Microsoft*,
   35 F.3d 1435 (9th Cir. 1994) ............................................................................ 12

*Basile v. Twentieth Century Fox Film Corp.*,
   2014 WL 12521340 (C.D. Cal. Aug. 19, 2014),
   *aff'd*, 678 F. App'x 576 (9th Cir. 2017).......................................................... 15

*Benay v. Warner Brothers*,
   607 F.3d 620 (9th Cir. 2010) ............................................................................ 12

*Benjamin v. Walt Disney Co.*,
   2007 WL 1655783 (C.D. Cal. June 5, 2007) .................................................... 16

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ............................................................................ 12

*Chase-Riboud v. Dreamworks, Inc.*,
   987 F. Supp. 1222 (C.D. Cal. 1997) ................................................................. 13

*Christianson v. West Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945) ............................................................................ 10

*Fillmore v. Blumhouse*,
   2017 WL 4708018 (C.D. Cal. July 7, 2017)................................................ 11, 12

*Fisher v. Nissel*,
   2022 WL 16961479 (C.D. Cal. Aug. 15, 2022) ............................................... 11

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019)........................................................................................ 11

*Fox Broad Co. v. Dish Network*,
   747 F.3d 1060 (9th Cir. 2014) ...................................................................... 7, 20

v

*Funky Films v. Time Warner Entm't,*
    462 F.3d 1072 (9th Cir. 2006) ............................................................... 12

*Gallagher v. Lions Gate Entm't,*
    2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ................................. 20

*Green v. Harbach,*
    2018 WL 3350329 (S.D.N.Y. July 9, 2018),
    *aff'd* 750 F. App'x 57 (2d Cir. 2019) .................................................. 18

*Kouf v. Walt Disney Pictures,*
    16 F.3d 1042 (9th Cir. 1994) ............................................................... 13

*Litchfield v. Spielberg,*
    736 F.2d 1352 (9th Cir. 1984) ............................................................. 13

*Luvdarts, LLC v. AT&T Mobility, LLC,*
    710 F.3d 1068 (9th Cir. 2013) ............................................................. 21

*Marcus v. ABC Signature Studios,*
    279 F. Supp. 3d 1056 (C.D. Cal. 2017) .............................................. 11

*Micro Star v. Formgen Inc.,*
    154 F.3d 1107 (9th Cir. 1998) ...............................................................7

*Mirage Editions, Inc. v. Albuquerque A.R.T. Co.,*
    856 F.2d 1341 (9th Cir. 1988) ...............................................................7

*Pickett v. Prince,*
    207 F.3d 402 (7th Cir. 2000) .................................................................8

*Rentmeester v. Nike, Inc.,*
    883 F.3d 1111 (9th Cir. 2018) ............................................................. 10

*Salinger v. Colting,*
    641 F. Supp. 2d 250 (S.D.N.Y. 2009), *vacated on other grounds,*
    607 F.3d 68 (2d Cir. 2010) .....................................................................7

*Schkeiban v. Cameron,*
    2012 WL 5636281 (C.D. Cal. Oct. 4, 2012) ...................................... 16

*Shame on You Prods. v. Elizabeth Banks,*
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) ....................................... 12, 16

vi

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Silas v. Home Box Office*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016),
    *aff'd*, 713 F. App'x 626 (9th Cir. 2018).................................................. 15, 16, 19

*Smith v. Weeknd*,
    2019 WL 6998666 (C.D. Cal. Aug. 23, 2019)................................................. 21

*Sobhani v. @RadicalMedia Inc.*,
    257 F. Supp. 2d 1234 (C.D. Cal. 2003) ........................................................8

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ..................................................................... 10

*Walker v. DC Comics, Inc.*,
    67 F. App'x 736 (3d Cir. 2003) ....................................................................8

*Whitehead v. Netflix, Inc.*,
    2022 WL 17342602 (N.D. Cal. Nov. 30, 2022) ................................................ 10

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ................................................ 10, 11, 12

**Federal Statutes**

17 U.S.C. § 103(a)...............................................................................................9

17 U.S.C. § 106(2) ........................................................................................ 7, 9

**Rules**

Fed. R. Civ. Evid. 201 ..................................................................................... 10

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this case, an aspiring author wrote an unauthorized novel that he advertised as a "pitch-perfect" sequel to J.R.R. Tolkien's iconic book series, *The Lord of the Rings*, which "scrupulously followed" Tolkien's "established mythology" and featured numerous characters, locations, and plot points copied from Tolkien's works without permission.  While this is a copyright infringement case, this aspiring author, Demetrious Polychron, is not the defendant, but rather *the plaintiff*, contending that the *authorized* Amazon original series, *The Lord of the Rings: Rings of Power*, somehow infringed *his* infringing novel.  The law does not support the absurdity of this lawsuit.

Describing Plaintiff's allegations as frivolous would be an understatement.  By his own admissions, Plaintiff's work is an unauthorized derivative work of *The Lord of the Rings*.  Even the title of Plaintiff's novel, *The Fellowship of the King*, is taken from *The Fellowship of the Ring*, the first book in *The Lord of the Rings*.  Notably, Plaintiff dedicates his published work to Tolkien, writing: "If not for you, this would not be."  This is true.  Plaintiff's infringing work could not exist without Tolkien's legendary creativity, which forms the basis and backbone of Plaintiff's novel.  Because Plaintiff's work is itself an extensive infringement of *The Lord of the Rings*, it is not subject to copyright protection as a matter of law.

Even if Plaintiff could claim copyright protection in his infringing work, the alleged similarities between his work and *Rings of Power* fall significantly short of plausibly establishing substantial similarity.  Some of the alleged similarities do not even appear in the version of Plaintiff's novel that he registered with the Copyright Office, meaning that they cannot support an infringement claim.  Even worse, many of the alleged similarities *were taken from Tolkien*, and thus not original to Plaintiff (and which Amazon Studios had a license to use in any event).  The remaining

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

alleged similarities are either high-level generic similarities, elements that flow naturally from fantasy works, or mischaracterizations of one or both of the works.

Plaintiff's claims against the Amazon Defendants should be dismissed with prejudice and they should be awarded attorneys' fees for having to defend against this frivolous lawsuit.

## II.    FACTUAL BACKGROUND

### A.    *The Lord of the Rings*

*The Lord of the Rings* is a series of three books, *The Fellowship of the Ring*, *The Two Towers*, and *The Return of the King*, written by J.R.R. Tolkien.[1]  Together, they tell the story of Frodo Baggins, a hobbit who finds himself in possession of the "One Ring," a powerful ring forged by the Dark Lord, Sauron.  The books explain that, long ago, Elves forged nineteen "rings of power," which gave their wearers various abilities.  Sauron then forged the "One Ring" that was more powerful than, and could control, all of the others.

In the books, Frodo and his companions (known as the "fellowship of the ring") go on a quest through the continent, Middle-earth, to the evil land of Mordor to destroy the One Ring and defeat Sauron.  In telling this story, Tolkien created a fictional universe of thoroughly crafted locations, each with unique landmarks, topographies, and dialects.  He also introduced countless original characters of various species, including hobbits, wizards, Dwarves, Elves, and Orcs, who either help or hinder the fellowship in their journey.  Ultimately—spoiler alert—Frodo and his companions succeed in destroying the One Ring.

Tolkien's canon, however, does not begin or end with *The Lord of the Rings*. Tolkien and his son published thousands of additional pages about Tolkien's

---

[1] *The Lord of the Rings* and other relevant works by Tolkien are incorporated into the FAC by reference.  A copy of *The Lord of the Rings* has been lodged with the Court.  *See* Koonce Decl. Ex. A.

2

universe.  Together, these works craft a fantasy world that is so meticulously detailed that entire academic journals exist solely to analyze it.

**B.**     ***Rings of Power***

*Rings of Power* is an Amazon original series, authorized by the Tolkien Estate.[2]  The series is a prequel based on the appendices to *The Lord of the Rings*, taking place in the time leading up to the forging of the rings of power.

The first season of the series tells several parallel stories.  One story focuses on the harfoots—an early breed of migratory hobbit.  Prior to their migration, a young harfoot, Elanor "Nori," discovers a strange man in a crater who appears to have fallen out of the sky.  Nori befriends the stranger—who does not know his own identity—and soon discovers that he has magical powers.  At the end of the first season of the series, three evil, magical women find the stranger and (falsely) proclaim that he is the Dark Lord, Sauron.  But the stranger realizes that he is a good wizard, not an evil lord, and uses magic to banish the women.

Another story centers around an Elf named Galadriel (a prominent character from *The Lord of the Rings*) who has made it her mission to destroy Sauron.  Early in the series, Galadriel finds herself stranded in the middle of the ocean and is rescued by a stranger who introduces himself as Lord Halbrand.  Galadriel and Halbrand travel to Númenor—a country inhabited by men who are distrustful of Elves.  There, Galadriel comes to believe that Halbrand is the king of the Southlands, which was overrun by Orcs.  Galadriel convinces the Queen Regent of Númenor and its citizens to travel to the Southlands to fight the Orcs and restore Halbrand to his throne.  In the Southlands, Galadriel and the Númenorean troops fight the Orcs and their supporters.  While the Númenoreans prevail, this victory is

---

[2] The first season of *Rings of Power* is incorporated into the FAC by reference and will be lodged with the Court.  *See* Levine Decl. Ex. 1.  It is also available on Amazon Prime at: https://www.amazon.com/Lord-Rings-Power-Season/dp/B09QH98YG1.

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

short-lived. A man who survived the battle sets off a chain reaction that causes a volcano to erupt, burying the Southlands in ash and creating the evil land, Mordor. Halbrand is injured in the explosion, and Galadriel takes him to be treated by the Elves, who are known for their healing powers.

At the same time, the Elves are struggling because their powers are fading. They learn that Dwarves have discovered an ore called mithril, which the Elves believe can reverse their diminishing powers. An elf named Elrond travels to the Dwarven kingdom, Khazad-dûm, to meet with the king, Durin, in order to request permission to mine mithril. While the king refuses Elrond's plea, Elrond obtains a piece of mithril and brings it home. In the last episode of the season, the Elves use the mithril to forge three rings—the first rings of power. Halbrand, now recovered, takes a great interest in the forging. He later reveals that he is Sauron, his fascination with forging foreshadowing his eventual creation of the One Ring.

Notably, many of the characters in *Rings of Power*, including Galadriel, Elrond, Durin, and Sauron, as well as the locations featured, such as Númenor, Mordor, and Khazad-dûm, were created by Tolkien.

## C. *The Fellowship of the King*

Plaintiff's work, *The Fellowship of the King*, is a novel that purports to be a sequel to *The Lord of the Rings* and the first of a seven-book series that Plaintiff calls *The War of the Rings* (a slight alteration of *The Lord of the Rings*). FAC ¶¶ 20, 27. Plaintiff alleges that he registered the copyright for this novel in November 2017. *Id.* ¶ 22. The version of *The Fellowship of the King* that was registered with the Copyright Office, however, is different from the version that Plaintiff ultimately published and which forms the basis of the FAC. *See* Koonce Decl. Ex. F (published work), Ex. G (registered work).[3]

---

[3] The citations in this brief to *The Fellowship of the King* refer to the registered version, which is incorporated into the FAC by reference and has been lodged with the Court. *See* Tolkien Defendants' RJN ¶ 3.

4

*The Fellowship of the King* picks up a few decades after *The Lord of the Rings* ends.  In it, Elanor, a hobbit and the daughter of one of Frodo's companions (and a character created by Tolkien), receives a visit from a wizard, Alatar (another Tolkien character), who informs her that in addition to the nineteen rings of power described in *The Lord of the Rings*, an additional thirty rings were forged.  Koonce Decl. Ex. G at 22, 44.  According to Alatar, certain of these extra rings are even more powerful than the originals.  *Id.* at 35-36.

Elanor and her friends—including other children of characters from *The Lord of the Rings*—set off with Alatar to find the rings.  They are joined by the son of King Elessar (a Tolkien character), and they call themselves the "fellowship of the king," *id.* at 152, a nod to Tolkien's "fellowship of the ring."  During their journey, the protagonists learn that an Elf, Glorfindel (a Tolkien character), has become corrupted and now seeks to obtain all of the rings.  *Id.* at 246-253.  Other evil characters, including Ulbandi (a mad ogress, introduced in Tolkien's supplemental writings), are introduced as the fellowship's foes.  *E.g.*, *id.* at 144, 663.  At the end of the novel, Glorfindel kills a member of the fellowship, but the group nevertheless decides to continue their journey forward.  *Id.* at 763-764.

*The Fellowship of the King* is told in a non-linear fashion.  The travels of the fellowship are interrupted by flashbacks, which tell the background stories of certain characters, including Galadriel (a Tolkien character).  *See id.* at 391-472.  In *The Fellowship of the King*, Galadriel and her husband fight Orcs and, after they are victorious, become leaders of a kingdom.  *Id.* at 392-395.  Galadriel then proceeds to have a series of affairs, including with the King of Númenor.  *Id.* at 402, 450.  The King brings Galadriel with him to Númenor, but after she gives birth to his child, she is excommunicated.  *Id.* at 458-66.

The fact that *The Fellowship of the King* pulls characters, locations, and plots directly from Tolkien's works is no secret.  To the contrary, Plaintiff markets his novel by highlighting these similarities.  The website of his publisher, Fractal

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Books, explains that Plaintiff began writing the novel, after "surfing Tolkien fan sites" and reading "marginalia that JRRT [J.R.R. Tolkien] had written about Elves tortured by the Enemy and released to do mischief." *See* Tolkien Defendants' RJN ¶ 10. According to the website, Tolkien said, "[t]his idea should be taken up," and Plaintiff "took it as a command." *Id.* The website goes on to claim that Plaintiff's work "scrupulously follow[s]" Tolkien's canon and is "indistinguishable in origin and spirit from the originals." *Id.*

**D.     This Lawsuit**

On April 14, 2023, Plaintiff filed the initial complaint in this action, and on July 13, 2023, Plaintiff filed the FAC. In it, Plaintiff alleges that *The Fellowship of the King* is a "sequel" to Tolkien's *The Lord of the Rings*. FAC ¶ 27. He claims that he provided a "manuscript" of this work to Simon Tolkien, the grandson of J.R.R. Tolkien, and that *Rings of Power* was allegedly copied from that manuscript. *Id.* ¶¶ 28-29.

Plaintiff asserts two causes of action against the Amazon Defendants: contributory infringement and vicarious infringement. Plaintiff did not assert the direct infringement claim against the Amazon Defendants, nor the unfair competition claim. While Plaintiff's secondary infringement claims are unintelligible, Plaintiff's contributory infringement claim appears to allege that the four individual Amazon Defendants are contributorily liable for "not removing or directing removal" of *Rings of Power*, with no mention of the two corporate Amazon Defendants in that cause of action. FAC ¶¶ 55-67. The vicarious infringement claim is even more confusing because it alleges that the Amazon Defendants each directly infringed Plaintiff's work (even though the FAC does not allege a direct infringement claim against any of them), and then alleges that each of the Amazon Defendants is vicariously liable for the other Amazon Defendants in a circular fashion. *Id.* ¶¶ 69, 70-73.

### III.   PLAINTIFF CANNOT ESTABLISH DIRECT INFRINGEMENT

In addition to being a cause of action in itself, direct infringement is a necessary element for a claim of contributory or vicarious infringement.  *See Fox Broad Co. v. Dish Network*, 747 F.3d 1060, 1068 (9th Cir. 2014) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").  Here, since Plaintiff does not—and cannot—state a claim for direct infringement against *any* defendant, his secondary copyright infringement claims against the Amazon Defendants necessarily fail.

### A.   Plaintiff's Work is an Infringing Work that is Not Entitled to Copyright Protection

It is firmly established that infringing works are not entitled to copyright protection and cannot serve as the basis of a copyright infringement lawsuit, especially against the owners and licensees of the original work that the plaintiff infringed.  This is because copyright owners control a bundle of rights in connection with their works, including the exclusive right to "prepare derivative works based upon the copyrighted work."  17 U.S.C. § 106(2); *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) ("A copyright owner holds the right to create sequels.").  As a result, creating works that are derivative of another copyright owner's work without permission is *prima facie* copyright infringement.  *See Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir. 1988) (a derivative work is one which "would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of the copyright proprietor of such preexisting work"); *Salinger v. Colting*, 641 F. Supp. 2d 250, 254 (S.D.N.Y. 2009) (granting preliminary injunction in copyright infringement action when defendants published a continuation of *The Catcher in the Rye* because defendants' novel was an infringing derivative work), *vacated on other grounds*, 607 F.3d 68 (2d Cir. 2010).

*Anderson v. Stallone*, 1989 WL 206431 (C.D. Cal. Apr. 25, 1989) is instructive.  In *Anderson*, the plaintiff created an unauthorized treatment for a sequel to the *Rocky* movie franchise (written by and starring Sylvester Stallone), which the plaintiff titled *Rocky IV* and which "incorporated the characters created by Stallone in his prior movies."  *Id.* at *1.  The court held that the plaintiff's work was an infringing derivative work that could not be the basis of an infringement action.  It explained that the characters in the work "were lifted lock, stock, and barrel from the prior Rocky movies," and the plaintiff "retained the names, relationships, and built on the experiences of these characters from the three prior Rocky movies."  *Id.* at *8.  In other words, the plaintiff's "characters are not merely substantially similar to Stallone's, they *are* Stallone's characters."  *Id.* (emphasis in original). Thus, the Court held that the plaintiff's work was not entitled to copyright protection.  *Id.*

Other examples abound.  In *Sobhani v. @RadicalMedia Inc.*, 257 F. Supp. 2d 1234 (C.D. Cal. 2003), the plaintiff created spec commercials for Jack-in-the-Box, using the copyrighted Jack-in-the-Box character and footage from copyrighted commercials and sent them to the defendant.  A few months later, the defendant produced a commercial for Jack-in-the-Box that the court found was "similar in many respects" to plaintiff's spec commercials.  *Id.* at 1236.  Notwithstanding those similarities, the court found that the spec commercials were infringing works and thus not entitled to copyright protection.  *Id.* at 1240.  Similarly, in *Walker v. DC Comics, Inc.*, 67 F. App'x 736 (3d Cir. 2003), plaintiff composed a one-page story idea for DC Comics called "Superman: The Last Son on Earth," which put DC superheroes in unfamiliar situations.  *Id.* at 736-737.  Three years later, DC Comics published a new comic-book series with a near-identical title, "Superman: Last Son of Earth," which shared the same general plot idea.  *Id.* at 737.  In affirming summary judgment for DC Comics, the Third Circuit held that because the plaintiff infringed DC's copyright in creating his work, it was not entitled to any protection. *Id.* at 738; *see also Pickett v. Prince*, 207 F.3d 402, 404 (7th Cir. 2000) (rejecting

8

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

plaintiff's attempt to "claim[] the right to copyright a work derivative from another person's copyright without that person's permission and then to sue that person for infringement by the person's own derivative work").[4]

Here, *The Fellowship of the King* is an unauthorized—and infringing—derivative work of *The Lord of the Rings*. Plaintiff *expressly alleges* that his novel was intended to be a sequel to *The Lord of the Rings*. FAC ¶ 27. Plaintiff's publisher, Fractal Books, advertises that Plaintiff's work "scrupulously follow[s]" Tolkien's legendarium and that the novel is "indistinguishable in origin and spirit from the originals." *See* Tolkien Defendants' RJN ¶ 10. Plaintiff lifts characters, locations, plots points, and even dialogue "lock, stock, and barrel" from *The Lord of the rings*. *See Anderson*, 1989 WL 206431, at *8. In the first chapter of the novel alone, Plaintiff references Elanor, Samwise, and Rosie Gamgee, Bilbo and Frodo Baggins, High King Elessar, Queen Arwen, Peregrin Took, Meriadoc Brandybuck, Galadriel, and Celebrimbor, *all of whom were created by Tolkien*. Plaintiff likewise references locations including the Shire, Hobbiton, Bucklebury, Tuckborough, the Four Farthings, Bag End, Bree, Arnor, Gondor, Tookland, Buckland, Minas Tirith, and Emyn Uial, all of which were created and meticulously described by Tolkien, including in illustrated maps at the end of *The Lord of the Rings* novels.[5]

Plaintiff does more than merely reference these characters and settings. He relies on the development of these elements from *The Lord of the Rings*, providing little background on these characters and places, assuming that readers will already

---

[4] While there has been some discussion of whether Section 103(a) of the Copyright Act permits the creator of an unauthorized derivative work to protect any non-infringing portions of the work, as the *Anderson* court explained, in any event "section 106(2) [of the Copyright Act] most certainly precludes the author of an unauthorized infringing derivative work from suing the author of the work which he has already infringed," 1989 WL 206431, at *11, which is precisely the case here.

[5] Plaintiff also verbatim copies poems and quotes from Tolkien, which are sprinkled throughout his book. *See* Koonce Decl. Ex. F at vi.

9

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

know them from Tolkien's works.[6]  Put simply, Plaintiff's work is an unauthorized derivative work, and, as a result, Plaintiff cannot establish copyright infringement against any defendant for allegedly infringing his infringing work.  Plaintiff's FAC must be dismissed with prejudice for this reason alone.

## B.      The Works Are Not Substantially Similar As a Matter of Law

Even if Plaintiff's work were entitled to copyright protection, to avoid dismissal, Plaintiff must plausibly allege that his work and *Rings of Power* are substantially similar in their protected expression.  *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  He cannot do so.

### 1.      Substantial Similarity May Be Decided on a Motion to Dismiss

It is well established that when the works at issue in a copyright case "are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."  *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).  This principle was reaffirmed more than 70 years later and remains the law in the Ninth Circuit.  *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018) (affirming dismissal of copyright claim for lack of substantial similarity as a matter of law); *see also Whitehead v. Netflix, Inc.*, 2022 WL 17342602, at *10 (N.D. Cal. Nov. 30, 2022) (confirming that *Christianson* "is still good law," and that "[i]n the years since *Christianson*, the Ninth Circuit has regularly affirmed dismissals of copyright infringement claims when a comparison of the works . . . shows that they are not substantially similar as a matter of law").

In considering a motion to dismiss, courts may also "consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201."  *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007).  This includes facts "not subject

---

[6] While this brief describes a number of examples of Plaintiff's use of elements created by Tolkien, they are not exhaustive.  Enumerating *all* of the creative expression that Plaintiff stole from Tolkien would require a brief as long as the novel itself.

to reasonable dispute," *Marcus v. ABC Signature Studios*, 279 F. Supp. 3d 1056, 1062-1063 (C.D. Cal. 2017), and "generic elements of creative works," *Zella*, 529 F. Supp. 2d at 1129; *see also Fillmore v. Blumhouse*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) (judicially noticing that "[b]ringing the dead back to life" is common in horror, fantasy, and sci-fi, and that "[d]ream sequences are a common narrative device in works of fiction").

### 2.     Unregistered Elements Cannot Be Considered By This Court

As an initial matter, many of the alleged similarities that Plaintiff describes in Exhibit B to the FAC do not appear in the registered work and, accordingly, cannot be considered by this Court when assessing substantial similarity.

In *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019), the United States Supreme Court confirmed that in order to bring a copyright infringement action, a plaintiff must first obtain a registration of the allegedly infringed work with the Copyright Office.  Courts cannot consider elements or aspects of a work that are not in the registered version.  *See Fisher v. Nissel*, 2022 WL 16961479, at *5 (C.D. Cal. Aug. 15, 2022) (partially dismissing copyright claim to the extent based on unregistered episodes of allegedly infringed television series).

Several of the alleged similarities described in the FAC are not in the registered version of Plaintiff's work.  For example, the registered version of Plaintiff's novel does not include a cover, and thus Plaintiff's allegation that the cover image of the published book is similar to a scene in *Rings of Power* cannot be considered.  The registered work likewise does not appear to discuss a Coat of Arms that is actually a map, does not state "a woman should be given an apprenticeship," and does not mention a "Lótë tree."  *See* FAC Ex. B.  While these alleged similarities are unprotectable in any event, this Court does not need to reach that conclusion to disregard them, as they were not registered with the Copyright Office.

11

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 3.     The Court Must Filter Out Unprotectable Elements

To assess substantial similarity on a motion to dismiss, the Ninth Circuit uses the "extrinsic test," which focuses on objective "articulable similarities" between the works.  *Zella*, 529 F. Supp. 2d at 1133.  In comparing the works, "a court must filter out and disregard the non-protectible elements."  *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002).  Indeed, courts "may place *no* reliance upon any similarity in expression resulting from unprotectable elements."  *Apple v. Microsoft*, 35 F.3d 1435, 1446 (9th Cir. 1994).

Accordingly, courts filter out so-called *scenes a faire*, or elements that flow naturally from a basic premise or genre.  *Cavalier*, 297 F.3d at 823.  For example, in *Benay v. Warner Brothers*, 607 F.3d 620 (9th Cir. 2010), the Ninth Circuit disregarded numerous similarities that flowed from the works' shared "basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare."  *Id.* at 624-625; *see also Funky Films v. Time Warner Entm't*, 462 F.3d 1072, 1077-1081 (9th Cir. 2006) (plaintiff's extensive alleged similarities relied "heavily on *scenes a faire* – not concrete renderings specific to [plaintiff's work] – and are, at best, coincidental").

Courts also routinely filter out generic or common elements before analyzing substantial similarity.  *See, e.g., Fillmore*, 2017 WL 4708018, at *3 (finding that "[d]ream sequences" and "[b]ringing the dead back to life" are unprotectable); *Shame on You Prods. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1159 (C.D. Cal. 2015) ("outdoor chase on wheels" was too generic to be protectable).

### 4.     The Court Must Filter Out Expression Original to Tolkien

In addition to filtering out generic elements before analyzing substantial similarity, this Court must also filter out expression original to Tolkien, not Plaintiff.  This is because "[c]opyright protection does not extend to . . . material traceable to common sources" and "[w]here common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff,

12

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

there is no infringement." *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1226 (C.D. Cal. 1997).

That is precisely the case for many of Plaintiff's alleged similarities.  Plaintiff repeatedly takes elements from *The Lord of the Rings* and Tolkien's other works and attempts to pass them off as his original creations.  For example, Plaintiff asserts that both his work and *Rings of Power* have characters named "Elanor" and "Marigold," but these characters were initially created by *Tolkien* in *The Return of the King*, rather than by Plaintiff.  Similarly, Plaintiff alleges that both works reference the Dwarf, Durin, but this character was also created by Tolkien and discussed in the appendices to *The Return of the King*.  And the other purported similarities related to Durin, including the existence of female Dwarves and the fact that Durin has a wife and children, are generic elements flowing from *Tolkien's* expression, not Plaintiff's.  Plaintiff also claims that the works share locations, including Khazad-dûm, Mordor, and Númenor.  Once again, these locations were created by Tolkien.  And Plaintiff contends that both works reference the "War of Wrath," but this is the name of a battle referenced in Tolkien's writings.

### 5.   The Works' Protected Expression Is Not Substantially Similar

Once the unprotectable elements are filtered out, courts must then compare the objective, "specific expressive elements" of the works at issue, specifically the "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Kouf v. Walt Disney Pictures*, 16 F.3d 1042, 1045 (9th Cir. 1994). Importantly, courts repeatedly find that lists of "random similarities scattered throughout the works"—like the FAC's Exhibit B—are insufficient to satisfy the extrinsic test because they are "inherently subjective and unreliable." *See Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984).

### a.   Plot and Sequence of Events

Other than the assertion that *Rings of Power* took "storylines" from *The Fellowship of the King*, FAC ¶ 30, Plaintiff does not allege any similarities between

13

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the general plots or sequences of events of *The Fellowship of the King* and *Rings of Power*. Nor could he, as the works are entirely different.

*Rings of Power* is a prequel to *The Lord of the Rings*, taking place thousands of years earlier.[7] The series tells the story of the time leading up to the forging of the rings of power and focuses on several inter-connected plots, alternating between scenes of Galadriel and Halbrand, the harfoots on their migration, Elrond and Durin at Khazad-dûm, and men and Orcs in the Southlands. *The Fellowship of the King*, by contrast, is a purported sequel to *The Lord of the Rings*, recounting a journey taken by the children of characters in *The Lord of the Rings* to find additional rings of power.

The random, out-of-context purported similarities that Plaintiff alleges in Exhibit B do not come anywhere close to plausibly establishing substantial similarity between the works' plots. Many of these similarities are *scenes a faire* in fantasy works and fiction more generally. For example, Plaintiff claims that the appearance of "healing elfin seeds" in *Rings of Power* is the same as the "waters of awakening" in *The Fellowship of the King*. But the appearance of a magical healing potion is ubiquitous to fantasy works. Similarly, Plaintiff claims that both works feature three evil, magical women, but the trope of three magical women can be found in works dating back at least to Shakespeare's *Macbeth* (which opens with a scene of three witches) and has been featured repeatedly in all forms of fiction— from the three wives in *Dracula* to the three witches in the Disney movie *Hocus Pocus*. Other alleged similarities are even more commonplace. For instance,

---

[7] In the FAC, Plaintiff claims that *Rings of Power* was initially "set to take place years following the LOTR series, focusing on a Young Aragorn, the future king of Gondor." FAC ¶ 29. Even if this were true, focusing on a "Young Aragorn" would still be a prequel to *The Lord of the Rings*—which initially introduced Aragorn as an adult in *The Fellowship of the Ring*. Plaintiff's work, on the other hand, takes place *after* the events of *The Lord of the Rings*.

14

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff alleges that both works have women who ride on horses.  But this can be said of nearly every work that takes place prior to the invention of modern transportation and certainly is not evidence of copying.

In addition, some alleged similarities are nothing alike when considered in the works' fuller contexts.  For example, Plaintiff disingenuously draws a similarity between the "magically induced mountain flood" in *Rings of Power* and a line in *The Fellowship of the King*, stating "[f]rom far away in the heights of the mountains, I hear… the beginnings of the faintest roar."  But "[d]estruction by flood is a common story element, traceable back to stories such as Noah's Ark."  *Basile v. Twentieth Century Fox Film Corp.*, 2014 WL 12521340, at *6 (C.D. Cal. Aug. 19, 2014), *aff'd*, 678 F. App'x 576 (9th Cir. 2017).  Regardless, the "roar" in Plaintiff's work is not, in fact, a mountain flood, but the birth of a dragon.  Koonce Decl. Ex. G at 759.  And while Plaintiff claims that both works reference blindfolds pulled over eyes, even if this were protectable expression (which it is not), these two scenes are nothing alike.  In *Rings of Power*, the Queen Regent of Númenor wears a blindfold after her eyes are damaged when a volcano erupts in the Southlands.  In *The Fellowship of the King*, by contrast, an evil wizard walks into a meeting of other evil characters wearing a blindfold.  *Id.* at 710.[8]

### b. Theme

"A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise."  *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).  Here, Plaintiff does not claim that *Rings of Power* copied any

---

[8] The only allegation relating in any way to "sequence of events" is Plaintiff's assertion that the cover of his novel and the opening scene of *Rings of Power* both feature a fight between a dragon and an eagle.  But this image is not included in Plaintiff's registered work.  Regardless, Tolkien's works describe battles between dragons (symbols of evil) and eagles (symbols of good).

15

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

specific theme from *The Fellowship of the King*.  And for good reason, as the themes in Plaintiff's work are ubiquitous and unprotectable, such as good versus evil and the importance of friendship.  *See Schkeiban v. Cameron*, 2012 WL 5636281, at *2 (C.D. Cal. Oct. 4, 2012) ("Further, the general similarities between these themes, such as saving the world or battles between good and evil are not subject to copyright.").

### c.    Characters

"In determining whether characters are similar, a court looks at the totality of the characters' attributes and traits as well as the extent to which the defendants' characters capture the total concept and feel of the figures in the plaintiff's work." *Shame on You Prods.*, 120 F. Supp. 3d at 1164 (internal brackets and quotation marks omitted).  As part of this analysis, courts also analyze characters' "noticeable," *Silas*, 201 F. Supp. 3d at 1177, or "material," *Benjamin v. Walt Disney Co.*, 2007 WL 1655783, at *6 (C.D. Cal. June 5, 2007), differences.  Here, while Plaintiff attempts to draw parallels between various characters in the works, to the extent any similarities exist they are attributable to Tolkien's original expression, not Plaintiff's.  And any superficial similarities are undermined by the vast differences between the characters.

### (1)    Galadriel

Many of Plaintiff's alleged similarities concern the character of Galadriel.  But *Galadriel is a character created by Tolkien*—not Plaintiff.  Even if Plaintiff did create Galadriel, the character arcs in each work differ extensively.  While Galadriel in *Rings of Power* is motivated to fight Sauron and then ironically causes his return, Galadriel in *The Fellowship of the King* has a storyline largely defined by her sexual attraction to and affairs with various male characters.

In addition, the alleged similarities are not actually similar when considered in the works' contexts.  For example, Plaintiff notes that Galadriel in each work travels to Númenor (a location created by Tolkien), but how each character gets to

16

Númenor and what happens there is different.  Galadriel in *Rings of Power* is floating in the sea with Lord Halbrand, and they are rescued by a ship of men traveling to Númenor, after which she launches a campaign to reclaim the Southlands for Halbrand.  Galadriel in *The Fellowship by the King*, by contrast, has an affair with the King of Númenor and travels there with him after becoming pregnant with his child and is then excommunicated.  Koonce Decl. Ex. G at 453. And while Plaintiff claims that the Galadriel characters in both works experience "antipathy" from a woman in Númenor, this is only a similarity at the highest level of generalization.  In *Rings of Power*, the Queen Regent initially distrusts Galadriel, but when the men of Númenor seek to banish Galadriel, the Queen Regent halts the exile and instead sends Númenorean troops to fight alongside Galadriel.  In *The Fellowship of the King*, by contrast, the King of Númenor's daughter dislikes Galadriel because she had an affair with her father, and rather than support Galadriel, she has Galadriel expelled.  *Id.* at 456, 462-466.

### (2)   Adar and Glorfindel

Plaintiff also claims that there are similarities between the character of Adar in *Rings of Power* and Glorfindel in *The Fellowship of the King*.  While both characters are Elves tortured by an evil lord, this idea is original to Tolkien, not Plaintiff—something that Plaintiff's publisher readily admits.  *See* Tolkien Defendants' RJN ¶ 10 (noting that Tolkien wrote about "Elves tortured by the Enemy and released to do mischief.").  Other than this unprotectable similarity, the characters differ markedly.  Glorfindel in *The Fellowship of the King* tries to collect the rings of power and ultimately kills one of the members of the fellowship of the king.  *See* Koonce Decl. Ex. G at 246-253, 763-764.  Adar in *Rings of Power*, by contrast, is not trying to collect rings (because they have not been forged yet), but instead leads a group of Orcs in the Southlands and is ultimately captured by Galadriel.  Beyond the idea of a corrupted elf—which is original to Tolkien—these characters are nothing alike.

17

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

**Davis Wright Tremaine** LLP
865 S. Figueroa St, Suite 2400
Los Angeles, California 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Notably, Plaintiff claims that Adar is also similar to a *different* character in *The Fellowship of the King* named Estel.  But Plaintiff does not explain how they are similar.  Moreover, courts have rejected efforts like this, to "mix and match characters and plot lines in [an] attempt to find similarity in [] works."  *Green v. Harbach*, 2018 WL 3350329, at *6 (S.D.N.Y. July 9, 2018), *aff'd* 750 F. App'x 57 (2d Cir. 2019).

### (3)    The "Stranger" and Alatar

Plaintiff next attempts to draw similarities between the stranger who falls from the sky into the harfoots' camp in *Rings of Power* and Alatar, the wizard in *The Fellowship of the King*.[9]  But a "wizard" character is common to fantasy works—including, of course, *The Lord of the Rings*.  *See Allen v. Scholastic, Inc.*, 739 F. Supp. 2d 642, 659-60 (S.D.N.Y. 2011) (holding that "famous male wizards, initiated late into wizarding, who receive formal education in wizardry" was a "general prototype too distinct to merit protection").

Other than being wizards, Plaintiff only offers two alleged similarities between these characters.  *First*, he claims that the stranger in *Rings of Power* "displays the power" similar to Plaintiff's wizard character Alatar when he lifts a staff and winds rustle around him.  But a staff that causes magic to occur is a generic trait common to wizards in fantasy works.  *Second*, Plaintiff claims that the stranger in *Rings of Power* "displays the power of Ulbandi's Voice."  It is unclear what Plaintiff means here—in the scene in *Rings of Power*, the "stranger" simply yells.  There is no reference to Ulbandi in *Rings of Power*, and Plaintiff cannot seriously contend that characters yelling is protectable under copyright law.

---

[9] Plaintiff refers to the stranger in *Rings of Power* as "Gandalf"—a wizard from *The Lord of the Rings*.  While there are some hints that the stranger is Gandalf, his identity is not revealed in the first season.

18

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

##### (4)   Theo

Plaintiff notes that both works have a character named "Theo" (in *The Fellowship of the King* this character's full name is "Théoden"). But this name is derived from King Théoden in Tolkien's works. Other than sharing a name, the two "Theo" characters are nothing alike. In *Rings of Power*, Theo is a child in the Southlands who survives the battle with the Orcs. In *The Fellowship of the King*, on the other hand, Theo is a hobbit—not a man—who is part of the "fellowship of the king," goes on a quest to find the remaining rings of power, and is killed in a battle with Glorfindel.

##### (5)   Malva

Plaintiff last contends that the character of "Malva" in *Rings of Power* is similar to "traders from the Greater Harad" in *The Fellowship of the King*. But the only alleged similarity between the characters is that they are people of color, which, it should go without saying, is not a protectable element that can support a copyright infringement claim.

#### d.   Setting

While Plaintiff alleges similarities between the works' settings—including the locations of Númenor, Mordor, and Khazad-dûm—these settings were created by Tolkien, not Plaintiff. Regardless, the alleged similarities rely on unprotectable elements. For example, Plaintiff claims that both works reference ships from Númenor, but Númenor is an island, and the fact that ships travel to and from an island flows naturally from the setting. And while Plaintiff alleges that both works reference a location with a hammer on display, this location is the workshop where the rings of power from *The Lord of the Rings* were forged—the fact that there is a hammer flows from this setting.

#### e.   Dialogue

"[F]or a plaintiff to demonstrate substantial similarity of dialogue, it must show extended similarity of dialogue." *Silas*, 201 F. Supp. 3d at 1181 (internal

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

quotations omitted); *see also Gallagher v. Lions Gate Entm't*, 2015 WL 12481504, at *10 (C.D. Cal. Sept. 11, 2015) (three instances of similar dialogue could not demonstrate "extended similarity").  Plaintiff's dialogue allegations are largely limited to single words, such as "Emperor" and "eradicate."  The fact that two works use some of the same common words does not support a finding of substantial similarity in dialogue.  Plaintiff also claims that *Rings of Power* takes a line from a poem he includes in *The Fellowship of the King*, "running toward or from something."  But this is a generic phrase, and the poem does not even appear in the copyrighted version of the novel.

### f.   Mood and Pace

Plaintiff does not allege any similarities between the works' moods or paces, which thus do not support a finding of substantial similarity.

Overall, Plaintiff's alleged similarities between *Rings of Power* and *The Fellowship of the King* fall far short of substantial similarity and thus do not plausibly assert a claim for copyright infringement.

## IV.   PLAINTIFF CANNOT ESTABLISH SECONDARY INFRINGEMENT

Plaintiff's contributory and vicarious infringement claims against the Amazon Defendants fail for several independent reasons.

*First*, as argued above, Plaintiff cannot assert a plausible claim of direct infringement, and thus his contributory and vicarious copyright infringement claims against the Amazon Defendants necessarily fail.  *See Fox*, 747 F.3d at 1068 (no liability for secondary infringement in the absence of direct infringement).

*Second*, the FAC is hopelessly unclear as to who Plaintiff believes is secondarily liable for whose direct infringement.  For example, in Paragraphs 63-64 of the FAC, Plaintiff alleges that the individual Amazon Defendants "induced infringement by not removing or directing" removal of *Rings of Power*.  But Plaintiff does not assert a direct infringement claim against any of the Amazon Defendants—only the Tolkien Defendants.  FAC ¶¶ 40-54.  Even more confusingly,

20

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff appears to assert that the same defendants are liable for both direct and secondary infringement. *See* FAC ¶ 69. It is well-established, however, that a "defendant cannot be secondarily liable for defendant's own direct infringement." *Smith v. Weeknd*, 2019 WL 6998666, at *1-3 (C.D. Cal. Aug. 23, 2019) (dismissing contributory and vicarious infringement claims that were "based on a theory that defendants are simultaneously directly and secondarily liable for infringement"). To the extent Plaintiff is alleging that the Amazon Defendants simultaneously directly and secondarily infringed his work, such pleading is inconsistent and improper. And to the extent Plaintiff intended to allege certain defendants were direct infringers and others were secondary infringers, his allegations are confusing and unclear, and do not assert a plausible claim for secondary infringement.

*Third*, Plaintiff's allegations of secondary infringement are nothing more than conclusory, "threadbare recitals of the elements" of the claims and, thus, are insufficient to state a cause of action as a matter of law. *See, e.g.*, *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (affirming dismissal of contributory infringement claim based on conclusory allegations).

For these reasons, Plaintiff's secondary infringement claims must be dismissed.

## V.    CONCLUSION

For the reasons set forth above, the Court should dismiss all claims against the Amazon Defendants with prejudice.

DATED: July 27, 2023                    Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
AMANDA LEVINE
SAMUEL A. TURNER

By:   /s/ Nicolas A. Jampol
              Nicolas A. Jampol

Attorneys for the
Amazon Defendants

21

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Amazon Defendants, certifies that this brief contains 6,925 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 27, 2023                    /s/ Nicolas A. Jampol
                                        Nicolas A. Jampol

AMAZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
4887-4240-1651v.1 0051461-005588

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899