LACY H. ("Lance") KOONCE, III (*admitted pro hac vice*)
GILI KAREV (Bar Number: 348774*)*
**KLARIS LAW**
29 Little West 12 St.
New York, NY 10014
Telephone:(917) 612-5861
Email:     lance.koonce@klarislaw.com

Attorneys for Defendants the Tolkien Estate Limited, The Tolkien Trust and Simon Tolkien.

**IN THE UNITED STATES DISTRICT COURT**

**THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| DEMETRIOUS POLYCHRON,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>JEFF BEZOS, an Individual, JENNIFER SALKE, An Individual, SIMON TOLKIEN, an Individual, PATRICK MCKAY, an Individual, JOHN D. PAYNE, an Individual, AMAZON STUDIOS LLC, a California Limited Liability Company, AMAZON CONTENT SERVICES, LLC, a Delaware Limited Liability Company, THE TOLKIEN ESTATE LIMITED, THE TOLKIEN TRUST, and DOES 1-100,<br><br>　　　Defendants. | Case No. 2:23-cv-02831-SVW-E<br><br>**DECLARATION OF LACY H. KOONCE, III IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS' FEES** |

# DECLARATION OF LACY H. KOONCE, III

I, Lacy H. Koonce, III, declare as follows:

1. I am a partner at Klaris Law PLLC and have been admitted *pro hac vice* to practice before this Court. I am counsel for Defendants the Tolkien Estate Limited and the Tolkien Trust (collectively, the "Tolkien Estate"), and for Simon Tolkien (with the Tolkien Estate, the "Tolkien Defendants") in the above-referenced matter. I submit this declaration in support of Defendants' Motion for Prevailing Party Attorneys' Fees against Plaintiff Demetrious Polychron, pursuant to 17 U.S.C. § 505 and F.R.Civ.P., Rule 54(d).

**A.   Communications with Plaintiff Prior to Commencement of this Action**

2. On November 21, 2017, Plaintiff wrote to Simon Tolkien disclosing that he was writing a sequel to *The Lord of the Rings*. Plaintiff's Nov. 21, 2017 letter is attached hereto as **Exhibit A** (stating that he had read *The Lord of the Rings* "until the spines gave out" and that he has been "writing the obvious pitch-perfect sequel to 'The Lord of the Rings. I know I shouldn't have, but I really didn't have a choice.").

3. On November 7, 2019, Plaintiff through his then-counsel contacted The Tolkien Estate regarding a potential collaboration with respect to the publication of a sequel to *The Lord of the Rings*. The Tolkien Estate's UK counsel replied that the Tolkien Estate did not wish to grant the rights to any third party to publish a sequel to the *The Lord of the Rings*, noting that the Tolkien Estate had long maintained a policy of not licensing other writers to create sequels or extensions to Tolkien's famous works. The parties' November 2019 correspondence is attached hereto as **Exhibit B**.

4. On or around December 24, 2019, Plaintiff sent a follow up letter to Simon Tolkien alongside a copy of the manuscript of the Infringing Work, stating: "When I first started writing, I had no plan nor any real knowledge of what I was getting myself into. I only knew that I loved this world and it seemed to me the Holy

Grail of fantasy adventure; the thing that everyone wanted someone to do: to write the sequel to The Lord Of The Rings", [but] "now that it's written, I'm not sure what to do with it […] I have zero interest in infringing on your rights; the rights of the Estate, [but] I cannot conceive of deleting this manuscript."  Plaintiff's December 24, 2019 letter to Simon Tolkien is attached hereto as **Exhibit C**.

5. On March 14, 2023, after discovering that Plaintiff had actually published his unauthorized sequel notwithstanding the Estate's denial of his earlier request, the Tolkien Estate sent a letter to Demetrious Polychron demanding that he cease the publication and sale of his Infringing Work. The March 14, 2023 letter is attached hereto as **Exhibit D**.

6. On March 15, Plaintiff affirmed that he had received the cease-and-desist letter and would provide a substantive response by March 21. Plaintiff's March 15, 2023 response is attached hereto as **Exhibit E**.

7. On March 21, Plaintiff sent a 5,000-word email to officers of the Tolkien Estate, omitting counsel. Plaintiff's March 21, 2023 email is attached hereto as **Exhibit F**. In that email, Plaintiff warned that he was writing directly to the recipients because "I believe you are going to want to hear what I have to say, and at this stage, it is in everybody's best interests to keep our conversations 'in-house.'" In that email, he admitted he had created a sequel – he specifically cited "these new stories set in the world of Middle-earth, which you own" – but stated that he intended it to be a "loving homage" to J.R.R. Tolkien.  However, after a lengthy preamble in which he praised J.R.R. Tolkien, Plaintiff then raised what he called "the proverbial Elephant in the room": the alleged infringement of his book by the Amazon series *The Lord of the Rings: The Rings of Power*.  Plaintiff's email then took a decidedly more aggressive tone:

> *Did Harper-Collins and TROP copy TWOTR? Knowing they had hard copies after I mailed them one and hand delivered Simon another, if you compare all the inexplicable and statistical anomalous similarities between TROP and*

2

*TWOTR, and then add the totally unique story elements that I created and that were never part of JRRT's work, yet mysteriously appeared in TROP, it would be awfully hard to convince a jury TROP wasn't based on TWOTR.*

*Of course, this is only possible in a bizarre universe where the Estate is capable of infringing on its own properties and you would rather waste tens of millions of dollars suing your own IP in a misguided attempt to defend a fractured IP from which you do not benefit, while far lesser storytellers tell far inferior stories that continuously divide your fans, degrade your IP and destroy your relationship with Amazon, in lawsuit after counter-suit after injunction against TWOTR and TROP alike.*

*Why would anyone fight over a quarter of a billion dollars, for a series of horribly divisive storylines, settling for a tiny fraction of a broken and scattered IP, when tens of billions of dollars are waiting for you, by simply saying 'yes' to unifying your IP? If you accept the blessing of these stories in the spirt in which they were created and executed, you can also get Discovery/Warner-Brothers set-up with a much, much better set of stories, redeem your TV series, take back your videogames, merchandizing, and movies, and reunify your fanbase with far superior storytelling, while going from a single IP owning family to owning all the biggest fiction IP's of the 21st century.*

*It's your decision. However, I suggest you do not wait, and instead inform Mr. Bezos of this golden opportunity to review the first book in TWOTR, TFOTK so he can decide for himself if he agrees with the national reviews and he would like to redeem his Middle-earth TV series, by erasing that Rotten Tomatoes score with a hard reboot, before March 25th.*

8.     On March 30, the Tolkien Estate wrote again to Plaintiff demanding

3

DECLARATION OF LACY H. KOONCE, III IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS FEES
Case No. 2:23-cv-02831-SVW-E

that he cease commercialization of the unauthorized sequel and, in an effort to avoid more formal action, proposing a call to discuss the matter. The March 30, 2023 correspondence is attached hereto as **Exhibit G.**

9. Between March 30 and April 14 (the same day Plaintiff filed the initial Complaint), I and my associate, Gili Karev, tried repeatedly to schedule a call with Plaintiff to resolve the matter. Plaintiff repeatedly cancelled or postponed such calls. The latest of these efforts was on April 14, when Plaintiff cancelled our scheduled call and, hours later, his new attorney, Katie Charleston, filed the initial Complaint *against* the Tolkien Defendants in this lawsuit. In that Complaint, Plaintiff did not so much as acknowledge the Tolkien Defendant's rights, nor mention the prior correspondence with the Tolkien Estate in which he admitted the Infringing Work is a sequel.

10. Plaintiff's counsel has stated several times on different telephone calls after this case was filed that at the time of filing, she was not made aware by Plaintiff of *any* of his prior communications with the Tolkien Estate and its counsel, including those in 2019 and in March 2023.

**A. Plaintiff's Complaint and Tolkien Defendants' Motion to Dismiss.**

11. On April 14, 2023, Plaintiff filed a Complaint asserting the following four claims against the Amazon and Tolkien Defendants: (1) Copyright Infringement; (2) Contributory Copyright Infringement; (3) Vicarious Infringement; and (4) Unfair Competition. Plaintiff's copyright claims alleged that the Amazon Series infringed on copyright in and to his book *The Fellowship of the King* (the "Infringing Work").

12. On April 25, 2023, I sent a letter to Plaintiff's counsel reiterating the Tolkien Defendant's demands from our initial March 14, 2023 cease & desist letter, and noting that the lawsuit that Plaintiff had filed was frivolous, in particular because "[i]t is well settled that unauthorized derivative works are not afforded any copyright protection, because they unlawfully infringe the exclusive rights of the original

4

DECLARATION OF LACY H. KOONCE, III IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS FEES
Case No. 2:23-cv-02831-SVW-E

author," *citing* 17 U.S.C. § 106 and *Anderson v. Stallone,* 1989 WL 206431 (C.D. Cal. April 26, 1989. The April 25, 2023 letter is attached hereto as **Exhibit H**.

13. Plaintiff's counsel replied on May 1, 2023, reiterating that her client had no intention of ceasing to sell the Infringing Work. Plaintiff's counsel's May 1, 2023 response is attached hereto as **Exhibit I**.

14. On June 23, 2023, counsel for all Defendants met and conferred with Plaintiff's counsel, during which I explained the Tolkien Defendants' position that Plaintiff's work was infringing and therefore not capable of copyright protection; that the Complaint failed to allege any facts in support of its confusing direct and secondary infringement claims against both the Amazon and Tolkien Defendants; and that the unfair competition claims were pre-empted by federal law.

15. On July 13, 2023, Plaintiff filed a First Amended Complaint ("FAC") alleging the same four claims as in the initial Complaint. The FAC amended the copyright infringement claim to be as against the Tolkien Defendants only; amended the vicarious infringement claim to be as against the Amazon Defendants only; and amended the unfair competition claim to be as against the Tolkien Defendants only and focus entirely the Tolkien Defendants' valid takedown notices under the Digital Millennium Copyright Act.

16. On July 18, we held a second meet and confer with Plaintiff's counsel, again explaining the Tolkien Defendants' position regarding her client's infringement of their copyright interests; again noting that the infringement claims lacked any factual allegations and were confusingly circular; and again noting that her unfair competition claims were pre-empted by federal law. Counsel for Plaintiff did not provide any valid rebuttals or potential defenses to such claims.

17. On July 27, 2023, the Tolkien Defendants filed a Motion to Dismiss. The motion raised three primary legal grounds for granting dismissal of Plaintiff's entire claim: (1) Plaintiff failed to state a claim for direct infringement because the Infringing Work is an unauthorized derivative of *The Lord of the Rings* that is not

5

subject to protection as a matter of law, and therefore Plaintiff could not own the copyright to the work as necessary to bring a claim for infringement; (2) even if Plaintiff did have copyright protection in the Infringing Work, it was not substantially similar to the Amazon Series; and (3) Plaintiff's unfair competition claims were pre-empted by federal law. The Amazon Defendants also filed a Motion to Dismiss.

18. On August 8, 2023, Plaintiff filed Oppositions to the Motions to Dismiss that were riddled with inaccuracies and other circular and incomprehensive claims, including a wholesale failure to address the Tolkien Defendants' arguments as to Plaintiff's contributory infringement and unfair competition claims. Because a reply to the Opposition was due on August 14, 2023, Tolkien Defendants had already drafted their reply brief when the Court issued an order that same day granting Defendants' Motions to Dismiss the First Amended Complaint and dismissing all claims against all Defendants with prejudice.

**B. Tolkien Defendants' Counsel and Litigation Team**

19. Klaris Law is a boutique law firm based in New York City consisting of fifteen lawyers. The firm is well-known for its intellectual property, media law, and First Amendment practices, and has been recognized by Chambers and Partners for its media law practice. I am an intellectual property litigator with over 25 years of experience in federal and state courts, and have a particular expertise in litigating copyright cases, such as, recently, *Freeman v. Deebs-Elkenaney et al.*, 22-cv-02435 (S.D.N.Y.); *May v. Cyrus et al*, 18-cv-02238 (S.D.N.Y); *Sise v. Advance* Publications, Inc. et al, 18-cv-04892 (E.D.N.Y.); *Park v. Skidmore, Owings & Merrill LLP et al,* 17-cv-04473 (S.D.N.Y.); *Goldman v. Breitbart News Network LLC et al.,* 17-cv-03144 (S.D.N.Y); *China Central Television et al v. Create New Technology HK Limited et al,* 15-cv-01869 (C.D.Cal); and *Thomas Steinbeck et al v. Waverly Scott Kaffaga et al,* 14-cv-08681-TJH-GJS (C.D. Cal.). I graduated with honors from the University of North Carolina-Chapel Hill School of Law.

6

DECLARATION OF LACY H. KOONCE, III IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS FEES
Case No. 2:23-cv-02831-SVW-E

20. In addition to myself, the Tolkien Defendants' litigation team consisted of my associate, Gili Karev, and the Tolkien Defendants' long-standing U.K. counsel, Steven Maier of Maier Blackburn LLP.

21. Ms. Karev graduated summa cum laude with a double bachelor's degree in English Literature and Chinese from Tel Aviv University; has a law degree from City University of London Law School; and a J.D./LL.M from Columbia Law School as a Harlan Fiske Stone Scholar, where she was also the recipient of the Michael D. Remer Award for copyright law. She is currently an active member of the New York City Bar Association Copyright and Literary Property Committee and the Copyright Society.

22. Mr. Maier read law at St Peter's College, Oxford and qualified as a solicitor with Simmons & Simmons in 1986. After periods with Simon Olswang & Co and publisher Reed International, he joined Manches in 1992 where he headed the firm's IP Litigation group. He was a co-founder of Maier Blackburn in 2012. Steven specializes in both intellectual property and commercial litigation, with particular expertise in publishing and media law, including copyright and trade mark infringement, libel and privacy, confidential information and internet domain name cases.

23. Complete biographical information for myself, Gili Karev, and Steven Maier is attached hereto as **Exhibit J**.

24. We also had assistance from our local counsel, Kevin Vick of Jassy Vick Carolan LLP, in finalizing and filing our motion papers, but the Tolkien Defendants are not seeking to recover Mr. Vick's fees on this motion.

25. The work we performed in this case consisted of reviewing the Infringing Work against the works in Professor Tolkien's canon, which required an extensive amount of attorney time; communicating with our clients, co-counsel and Plaintiff's counsel; and drafting and filing the Tolkien Defendants' motion to dismiss and reply memorandum of law. In light of the odd posture of this case – an

7

DECLARATION OF LACY H. KOONCE, III IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS FEES
Case No. 2:23-cv-02831-SVW-E

infringing party suing the copyright owner – our analysis of procedural strategy was more extensive than in many cases; indeed, ultimately the Tolkien Estate determined that it was obligated to file the Related Case in order to fully protect its interests.

### C. Klaris Law's Billing Statements

26. I am familiar with Klaris Law's record-keeping and billing system, and I am aware of how Ms. Karev tracks her time. The firm's invoices show daily entries from each timekeeper with detailed descriptions of the work performed each day. I review the invoice on a monthly basis prior to sending it to the client. If it appears that certain billed tasks took longer than was reasonable, I will use my discretion in reducing such time to ensure the client remains appropriately and reasonably billed for the work required, and I did so here.

27. Klaris Law evaluates the billing rates charged by the firm's professionals on an annual basis, and sets partner, associate, and non-associate rates after comparing Klaris Law's rates with other comparable firm rates. As is the philosophy and practice of Klaris Law, our firm's rates typically fall well below that of comparable firms to ensure our clients have access to fair and reasonable rates without compromising quality.

28. For the calendar year 2023, Klaris Law bills my time at the hourly rate of $595, and Ms. Karev's time at an hourly rate of $495. These standard rates are significantly lower than those charged by attorneys with comparable experience in other comparable firms in New York City. In this matter, we billed the Tolkien Defendants at a discounted rate of $550 per hour for my time, and $450 per hour for Ms. Karev's time. Based on my experience, I believe the fees and costs incurred by the Tolkien Defendants in this action are reasonable and appropriate, especially considering the efforts we took to avoid litigation in the first place.

29. Mr. Maier is submitting herewith a declaration setting forth the amount and reasonableness of his firm's fees on this matter. The Declaration of Steven Maier is attached hereto as **Exhibit K.**

8

DECLARATION OF LACY H. KOONCE, III IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS FEES
Case No. 2:23-cv-02831-SVW-E

30\. Annexed in **Exhibit L** are true and correct copies of invoices of work conducted by Klaris Law on behalf of the Tolkien Defendants in connection with this action from April through August 2023. These invoices total $68,200.00 in fees.[1] Annexed in **Exhibit 1 to the Maier Declaration** are true and correct copies of invoices of work conducted by Maier Backburn LLP on behalf of the Tolkien Defendants for the same time period. These invoices total $10,665.00 in fees. The total attorneys' fees sought on this motion is therefore **$78,865.00**.

31\. For the reasons set forth above and in the accompanying memorandum of law, I respectfully request that the Court grant this motion and award attorneys' fees and other costs set forth herein and grant further relief as this Court may deem appropriate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 8th day of September, 2023 in Pelham, New York.

*[signature]*

Lacy H. Koonce, III

---

[1] All redacted time entries in the attached invoices relate to the Related Case and have been deducted from the total fees sought in this action. Four time entries have been partially redactions because the narrative descriptions reflected some tasks in the instant case, and some tasks in the Related Case. Those four time entries have been adjusted to reflect attorneys' fees in this case only. *See* Koonce Decl., Ex. L, Invoice 14775 (6/6/23 entry reduced from $1,237.50 to $450.00); Invoice 15038 (7/24/23 entry reduced from $1575.00 to $1125); Invoice 15098 (8/8/23 entry reduced from $1215.00 to $900.00 and 8/11/23 entry reduced from $3575.00 to #3300).

9

DECLARATION OF LACY H. KOONCE, III IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS FEES
Case No. 2:23-cv-02831-SVW-E